[Crim. No. 3757.   Second Dist., Div. Two.   May 11, 1944.]

THE PEOPLE, Respondent, v. JAMES J. GORMLEY, Appellant.

Morris Lavine for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

WOOD (W. J.), J.—Defendant was accused of forgery in two informations, containing five and four counts each respectively. The informations having been consolidated for trial, defendant was convicted on all charges. He has appealed from the judgments of conviction and from the order denying his motions for a new trial.

During the late months of 1942 defendant gave nine checks to various merchants and individuals in the San Fernando Valley territory and received merchandise or cash for them. The checks, which were in small amounts, were drawn on three different banks. In most instances they were made payable to cash. All of the checks were dishonored by the banks for the reason that the purported drawers had no accounts in the banks. The names of the drawers, several in number, and the residences given were fictitious. Exemplars of the handwriting of defendant were obtained by the officers, and expert witnesses testified that in their opinions the writing on the exemplars was made by the same person who wrote the dishonored checks. When he was arrested defendant told the officers that he was "going to take care of those checks out in the Valley." He also said that the four checks purported to be signed by J. W. Murphy "were not his."

■ Defendant complains of the ruling of the trial court denying his motion to set aside one of the informations, made on the ground that he had been committed without reasonable or probable cause. The transcript of the testimony received at the preliminary hearing was not made a part of the record in the superior court and therefore the point may not be considered at this time.

■ The taking of the exemplars of defendant's handwriting in the police station after his arrest did not constitute a violation of his constitutional rights safeguarded by section 13 of article I of the Constitution of California. Defendant wrote voluntarily on the cards which were introduced in evidence. No force or duress was used and no promise of immunity given. He was not compelled to be a witness against himself. (*People* v. *Bundy,* 168 Cal. 777, 781 [145 P. 537]; *People* v. *Whitaker,* 127 Cal.App. 370, 373 [15 P.2d 883].)

■ The trial court did not err in permitting officials from the three banks to testify concerning the nonexistence of bank accounts by the purported drawers of the various checks. It was unnecessary to bring into court all the records and books of the banks showing the accounts of the various customers in order to prove that the parties whose names purported to be signed upon the checks did not have accounts or credit with the banks. To meet situations like the present one the Legislature enacted subdivision 5 of section 1855 of the Code of Civil Procedure, avoiding the necessity of bringing in voluminous records and enabling a party to prove in court "the general result of the whole." The testimony was negative in character and did not require the testimony of an expert witness to establish that the accounts did not exist. (*People* v. *Weaver,* 96 Cal.App. 1, 10 [274 P. 361]; *People* v. *Kawano,* 38 Cal.App. 612 [177 P. 174].)

■ A more serious contention is made by defendant when he complains of the ruling of the trial court in permitting the use of an exemplar of his handwriting taken on November 15, 1933. On the last mentioned date defendant was under arrest in the sheriff's office of Los Angeles and there freely and voluntarily made a number of writings, including the alphabet, upon identification cards of the office. During the trial defendant testified that he had been arrested in Los Angeles in 1933 at the request of the San Bernardino authorities and that he was finally released because the district attorney of San Bernardino concluded that the postdated

check which he had given was in effect a promissory note. The trial court instructed the jury that the writing had been admitted in evidence for the limited purpose of serving as a specimen of defendant's handwriting and that the jury "should draw no inference whatsoever from anything that may be suggested to you by anything else on this card." Defendant argues that the introduction of the card of 1933 in evidence had the effect of prejudicing defendant in the eyes of the jury, who would naturally conclude that he had been in trouble with the police on a previous occasion in a matter similar to the one before the court. He asserts that the use of the exemplar was unnecessary because of the fact that the prosecutor had in his possession other exemplars which were taken upon the arrest of defendant on the present charges. Respondent relies upon the rule that evidence which is admissible need not be excluded because it may indicate guilt of other offenses and points out that the court properly limited the use of the writing in its instructions to the jury. Strong support for the position of defendant is found in *People* v. *Van Cleave,* 208 Cal. 295 [280 P. 983]. In that case the defendant was on trial on a charge of burglary and an expert witness testified that the thumbprint found at the location of the burglary was the counterpart of a thumbprint which he had taken of the defendant. Sometime later the prosecution offered in evidence fingerprints upon a card found in the identification bureau of the police department and bearing the name of the defendant. An expert witness testified that a thumbprint found on the card, which was made before the date of the burglary for which the defendant was being tried, was made by the same thumb which made the print found at the location of the burglary. In its opinion the court said that "the exhibit was offered merely because it was inspected by the finger print expert during the investigation which preceded appellant's arrest." It was held that the trial court erred in admitting the thumbprint and the judgment was reversed because of this error and also because of the misconduct of the trial judge. It is noteworthy that although a majority of the court held that the judgment should be reversed notwithstanding the provisions of section 4½ of article VI of the Constitution, two of the justices dissented on the ground that an analysis of the evidence did not establish that the case was a "close one" and that therefore there had not been a miscarriage of justice.

The case now before us may be distinguished from the Van Cleave case. The charge being forgery, it can be argued that an additional exemplar of defendant's handwriting was more needful in establishing the crime charged than was the additional thumbprint in the Van Cleave case. In the case now under review the trial court limited the effect of the exemplar in its instruction to the jury but it does not appear from the opinion in the Van Cleave case that such a limiting instruction was given to the jury. Notwithstanding these distinguishing features, we are of the opinion that the trial court should have resolved the question of the admissibility of the 1933 exemplar in favor of defendant in the absence of a showing that the expert witnesses needed specimens of his handwriting in addition to those given at the time of his arrest on the present charges. ▮ We are satisfied, however, that it is not probable that a different verdict would have been rendered if the questioned exemplar had not been used. There has been no miscarriage of justice.

The judgments and the order denying a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 8, 1944.