[Crim. No. 4887.  Second Dist., Div. Two.  Feb. 4, 1953.]

THE PEOPLE, Respondent, v. HARVEY W. HARPER et al., Appellants.

Russell E. Parsons for Appellants.

Edmund G. Brown, Attorney General, and Michael J. Clemens, Deputy Attorney General, for Respondent.

FOX, J.—Defendant Harvey W. Harper, formerly sergeant on the Los Angeles Police force, and his wife, Margaret, were convicted of violating Penal Code, section 337a, subdivision 2 (keeping and occupying a place with papers and paraphernalia for the purpose of recording bets), and also subdivision 4 thereof (recording bets). They appeal from the ensuing judgments and the orders denying their motions for a new trial.

On January 4, 1952, at about 1:45 p. m., police officers entered the residence of defendants without a search warrant. Officer Mullins, who entered from the rear, observed Mrs. Harper rise from a chair which was next to a table upon which was a telephone, a scratch sheet, and numerous pieces of yellow, lined paper on which there were pencil notations. These were identified at the trial by an expert in bookmaking practices as betting markers. Approximately 168 bets were recorded on these markers on horses running at various tracks throughout the United States on that day. Other betting markers covering previous dates were found in a rear bedroom where there was another telephone.

Upon the arrest of Mrs. Harper by Officer Mullins he took her into the front room where the other officers had already placed Harvey Harper under arrest. In response to a question as to the identity of the codefendant who was sitting on the divan Margaret replied that she had never

seen the man before. He informed the officers, however, that she was his wife. Officer Mullins had his hand on Margaret's arm but not in a holding or pulling manner. Mr. Harper told him to take his hands off his wife, jumped up from the divan and came at him. When Mullins saw Harper coming toward him he turned to meet him. When the latter placed both hands on his shoulder, Mullins, who feared Harper was going to either strike him or shove him, hit Harper three or four times. Another officer also hit Harper, who was immediately handcuffed. He was not thereafter struck.

Mr. Harper testified that when he and his wife were at the police station on the evening of January 4th a Sergeant Brown told him that if he would resign from the police department there would be no prosecution. He admitted, however, on cross-examination, that he was told the matter would have to be submitted to the district attorney's office as to whether or not there would be any prosecution but that usually under such circumstances the district attorney does not prosecute. Thereupon Harper resigned from the police department. The Harpers were then released and returned to their home. They were, however, requested to, and did, furnish exemplars of their handwriting which were later introduced in evidence in this case. About noon the next day (Saturday) the defendants were rearrested and booked. On that occasion Mrs. Harper gave two additional exemplars of her handwriting.

A handwriting expert using these exemplars testified that portions of the pencil writing on People's Exhibits B, C and D—all being betting markers—were, in his opinion, that of Mr. Harper, and the remainder of the writing on these betting markers was that of Mrs. Harper.

Defendants contend that their constitutional rights as guaranteed by the Fourth and Fifth Amendments to the United States Constitution, and section 19 of article I of the California Constitution were violated; that they were subjected to an unlawful search and seizure and compelled to be witnesses against themselves through the admission in evidence of the exemplars of their handwriting.

The fact that the police entered defendants' residence without a search warrant did not render inadmissible in evidence the betting markers and scratch sheet there recovered. (*People* v. *Gonzales,* 20 Cal.2d 165 [124 P.2d 44]; *People* v. *Kendall,* 111 Cal.App.2d 204 [244 P.2d 418]; *Wolf* v. *Colorado,* 338 U.S. 25 [69 S.Ct. 1359, 93 L.Ed. 1782].)

In this connection defendants attempt to bring their case within the principle of *Rochin* v. *California*, 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396] because of the physical encounter between the officers and Mr. Harper in his home. The Rochin case, however, is not applicable. It will be recalled that Rochin swallowed the narcotics that the officers found in his possession and that they forcibly pumped his stomach in order to retrieve the evidence. Here the blows that were struck by the policemen had no relation to the procurement of any incriminating evidence. It was an independent episode, apparently resulting from a misconception of Mr. Harper's acts and attitude, that had no bearing on the actual trial of the defendants.

The major attack of the defendants is aimed at the admission in evidence of their handwriting exemplars. Their basic argument is that they gave these exemplars only because of the alleged promise of the police officers that they would not be prosecuted. Defendants rely upon the privilege against self-incrimination contained in the Constitution of California (art. I, § 13) and in the Fifth Amendment to the Constitution of the United States. ■ Defendants, however, do not come within the protection of those constitutional guaranties since they only protect a person from any unwilling testimonial disclosures, and do not preclude the introduction of physical evidence that a defendant is induced to provide, such as an exemplar of his handwriting. ■ The protection extends only to communications, oral or written, upon which reliance is placed as involving a defendant's consciousness of the facts and the operation of his mind in expressing them. ■ There was no "testimonial compulsion" here. Defendants were not required to verify the authenticity of their handwriting on the exemplars. This was provided by a witness who saw them fill out the exemplars. Defendants were not compelled to disclose that the writing on the betting markers was theirs. This was proved by a handwriting expert. There is here no reliance to be placed upon any statement made by either of the defendants. The evidence was their handwriting, a physical fact which was compared with the handwriting on the betting markers and found to be the same. The exemplars were therefore properly admitted in evidence. (*People* v. *Trujillo*, 32 Cal.2d 105, 112-113 [194 P.2d 681] ; *People* v. *One 1941 Mercury Sedan*, 74 Cal.App. 2d 199, 204, 213 [168 P.2d 443] ; *People* v. *Smith*, 113 Cal.

App.2d 416, 419 [248 P.2d 444]; 8 Wigmore, Evidence, § 2265, p. 375; 22 Corpus Juris Secundum, §§ 649, 650.)

■ Mr. Harper argues that the evidence is insufficient to sustain his conviction. He is in error. The testimony shows that there were notations on some of the betting markers in his handwriting. This is sufficient to sustain the conviction of violating subdivision 4 of section 337a, Penal Code.

■ The circumstances were sufficient to support an inference of guilt as to subdivision 2 also. There can be no doubt that bookmaking was being conducted at their residence. He admitted, on the witness stand, knowing it was being carried on in his home. He sought to exculpate himself by testifying that he and his wife were having domestic difficulty, that he was not living there continuously, and had come there about 1 o'clock that morning when he got off duty in response to his wife's request for his advice regarding some insurance and other matters. He had spent the rest of the night there, and after he got up that morning he had gone to the store for his wife and had then gone out for a haircut. When the raid took place about 1:45 in the afternoon he was reading in the front room, waiting for the time to go to work as he was on the night watch. When the Harpers were released Friday night they went back to their residence. Mr. Harper was there at noon on Saturday when the officers rearrested him and his wife. When he was released the second time he returned to this same house. He kept clothing at this place and referred to it in his testimony as "my home" and "our home." This evidence would support an inference that Mr. Harper was not just a mere visitor in the house. This, taken with the evidence that he had recorded bets on races that had been run that day reasonably justified the inference that he was occupying the premises with paraphernalia for the purpose of recording bets in violation of subdivision 2, section 337a, Penal Code. (*People* v. *Ross,* 100 Cal.App.2d 116, 121 [223 P.2d 85].)

The judgments and orders denying defendants' motions for a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied February 18, 1953, and appellants' petition for a hearing by the Supreme Court was denied March 5, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.