[Crim. No. 9318.   In Bank.   Feb. 23, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK H. GRAVES, JR., Defendant and Appellant.

Frank H. Graves, Jr., in pro. per., and Richard A. Bancroft for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien, Derald E. Granberg and James T. Fousekis, Deputy Attorneys General, for Plaintiff and respondent.

TRAYNOR, C. J.—Defendant appeals from a judgment of conviction entered upon a jury verdict finding him guilty of three counts of forgery. (Pen. Code, § 470.)

Defendant was charged with forging three checks drawn on the Central Valley National Bank. The checks named defendant as payee, and he admittedly endorsed and deposited them, one in his account in the First Western Bank and the others in the Wells Fargo Bank. The Central Valley National Bank had no accounts in the names of the purported makers.

After the checks were returned unpaid, agents of the First Western and Wells Fargo Banks called on defendant at his office. Defendant explained that he had received the checks from three different persons in connection with a real estate transaction and stated that he did not know where these men could be located.

The bank agents then got in touch with Inspector Wiebe of the San Francisco Police Department. At his suggestion the agents and defendant met in the inspector's office. Defendant repeated his explanation, and at Inspector Wiebe's request wrote out two pages of handwriting exemplars, duplicating everything written on the faces of the three checks. Inspector Wiebe took defendant to the district attorney's office, where he again repeated his explanation. Defendant was then arrested.

The checks and the handwriting exemplars were turned over to Criminologist Williams of the San Francisco Police Department for examination. Three or four days later Williams asked Inspector Wiebe to obtain additional exemplars. Williams testified at the trial that the original exemplars were unsatisfactory because some of the writing on the checks was handprinted, and the exemplars were mostly in script. At Inspector Wiebe's request defendant, who was still in custody, wrote out three copies of each check on specimen check forms. At no time was defendant advised of his right to counsel or of any other constitutional rights.

The handwriting exemplars were introduced into evidence, and Williams testified that the handwriting on the faces of

the forged checks matched the handwriting of People's Exhibit 16 (exemplars given before arrest) and People's Exhibit 17 (exemplars given after arrest). The exculpatory statements that defendant made before his arrest were also admitted into evidence. They were substantially consistent with his testimony. Defendant contends that both sets of exemplars and the statements should have been excluded under *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

There is no merit in the contention that the exemplars and statements given before arrest should have been excluded. The exclusionary rule of *Escobedo* and *Dorado* applies only when the accusatory stage has been reached, that is, "when the officers have arrested the suspect and the officers have undertaken a process of interrogations that lends itself to eliciting incriminating statements, . . ." (*People* v. *Stewart*, 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97].)

Here defendant had not been arrested, and the purpose of the inquiry was not to elicit incriminating statements. Inspector Wiebe learned the facts of the transaction for the first time at this conference. It was only after the questions had been asked and answered and the exemplars given that the investigation focused on defendant and he was placed under arrest.

The handwriting exemplars furnished after defendant had been in custody for three or four days were also admissible. Inspector Wiebe did not elicit incriminating statements from defendant but only requested and secured additional exemplars to make the handwriting analysis easier. We need not decide whether defendant could have invoked the privilege against self-incrimination and refused to make these exemplars.[1] The right to counsel during police interrogation established in *Escobedo* v. *Illinois, supra,* is designed to prevent the use of coercive practices to extort con-

---

[1] Not every aid that a defendant or suspect is required to give the prosecution violates the privilege against self-incrimination. A defendant may be ordered to stand up in court for identification, or to try on items of clothing. (*Holt* v. *United States*, 218 U.S. 245 [31 S.Ct. 2, 54 L.Ed. 1021]; *People* v. *Lopez*, 60 Cal.2d 223, 244 [32 Cal.Rptr. 424, 384 P.2d 16].) Blood samples may be taken from a suspect without his consent, if the means used to obtain them do not shock the conscience. (*People* v. *Duroncelay*, 48 Cal.2d 766, 770 [312 P.2d 690].) Although we have found no case in which an unwilling defendant who has not waived the privilege has been ordered to give handwriting exemplars, statements in some California cases and the opinions of leading writers support the position that the privilege is not applicable. (*People* v. *Matteson*, 61 Cal.2d 466, 469 [39 Cal.Rptr. 1, 393 P.2d 161]; *People* v. *Harper*, 115

fessions or other incriminating statements. (*In re Lopez*, 62 Cal.2d 368, 372-373 [42 Cal.Rptr. 188, 398 P.2d 380].) It does not protect a defendant from revealing evidence against himself in other ways. It applies only when "the police carry out a process of interrogations that lends itself to eliciting incriminating statements, . . ." (*Escobedo* v. *Illinois*, 378 U.S. 478, 491 [84 S.Ct. 1758, 12 L.Ed.2d 977].) In *Escobedo* the United States Supreme Court emphasized its concern with the problem of using coercive methods to obtain confessions. (378 U.S. at 490 [dissenting opinion by White, J., at pp. 498-499].) It observed that any system of law enforcement that places primary reliance on confessions may become not only oppressive, but unreliable.

In *Escobedo*, the court found a remedy in the Sixth Amendment right to counsel for the abuses it deemed inherent in inquisitorial methods. There is nothing in the language or the logic of *Escobedo*, however, to indicate that this remedy is needed if the police have not carried out a process of interrogation that lends itself to eliciting incriminating statements. Accordingly, we find no support in *Escobedo* for invoking the right to counsel to block scientific crime investigation. Reliance on handwriting exemplars for expert analysis is not a substitute for thorough scientific investigation of crime but an excellent example of such investigation.[2] To preclude the police from asking for such exemplars would foster reliance instead on the very inquisitorial methods of law enforcement that *Escobedo* deems suspect.

The judgment is affirmed and the purported appeal from the nonappealable order denying a new trial is dismissed.

McComb, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

PETERS, J.—I dissent.

I agree with the majority that the exemplars and statements given before arrest were admissible under *Escobedo* and *Dorado* because the accusatory stage had not yet been

Cal.App.2d 776, 779 [252 P.2d 950]; *People* v. *Gormley*, 64 Cal.App.2d 336, 338 [148 P.2d 687]; *People* v. *Whitaker*, 127 Cal.App. 370, 373 [15 P.2d 883]; 8 Wigmore on Evidence (McNaughton rev. 1961) § 2265; McCormick on Evidence (1954) § 126.)

[2]"Handwriting identification is based upon the principle that every person's handwriting is distinctive. . . . The possibility that one person could imitate the handwriting of another and successfully deceive an expert document examiner is very remote." (Report of The President's Commission on the Assassination of President Kennedy, pp. 567-568.)

reached when they were secured. Defendant was not then in custody and the investigation had not yet focused on him. But, according to the expert, those exemplars were unsatisfactory because they were mostly in script, while the checks upon which the charge was based were mostly handprinted. At the request of the expert several new sets of exemplars were then secured after arrest, and at the accusatory stage, without informing the defendant of his rights to counsel and to remain silent. These exemplars were admitted into evidence and constitute the main evidence of guilt. It is my opinion that the admission of these exemplars was prejudicial error, and requires reversal. I cannot agree with the majority that the rights guaranteed by *Escobedo* and *Dorado* do not apply to these exemplars admittedly secured after the accusatory stage had been reached.

The majority reason that the right to counsel only applies to the elicitation of *statements* from the defendant and not to the elicitation of evidence in other forms. It is stated that "The right to counsel during police interrogation established in *Escobedo* v. *Illinois, supra,* is designed to prevent the use of coercive practices to extort confessions or other incriminating statements. [Citation.] It does not protect a defendant from revealing evidence against himself in other ways." The majority conclude, therefore, that it is unnecessary to reach the question whether handwriting exemplars fall within the privilege against self-incrimination.

The limitation of *Escobedo* and *Dorado* to evidence given in the form of statements is, in my opinion, unsound. It is contrary to the very purpose upon which the right to counsel during police interrogation at the accusatory stage is predicated.

The United States Supreme Court in *Escobedo* was primarily interested in preventing improper police tactics which spawned involuntary confessions. It concluded that the presence of counsel would go far to eradicate such tactics. (*In re Lopez,* 62 Cal.2d 368, 372-373 [42 Cal.Rptr. 188, 398 P.2d 380].) But those coercive practices thus sought to be restricted are not limited to obtaining confessions in the form of statements from an accused. There is no legal difference between a defendant being coerced into obtaining for the police documents or real evidence not otherwise obtainable by legal process, and being coerced into giving incriminating statements. There is no guarantee that coercive methods will not be used by the police to obtain documents or chattels

which are unobtainable by a search warrant because their location is unknown and unobtainable by legal compulsion because the use of such compulsion would violate the defendant's privilege against self-incrimination. Coercion can also be used to elicit incriminating conduct. In *People* v. *Furnish*, 63 Cal.2d 511 [47 Cal.Rptr. 387, 407 P.2d 299], the defendant gave incriminating statements after the accusatory stage had arisen and then went through a reenactment of the crime where it took place. Movies were taken of the reenactment, but we did not pass on their admissibility since they were not introduced into evidence. If the movies had been admitted, we certainly could not conclude that because such evidence of defendant's participation in the crime was not contained in statements, it was admissible even though the defendant was not advised of his right to counsel and was persuaded to perfom the reenactment by means of a process of interrogations designed to elicit such evidence. That handwriting exemplars may be coerced from a defendant in the same manner as are statements is clearly shown by *People* v. *Matteson*, 61 Cal.2d 466 [39 Cal.Rptr. 1, 393 P.2d 161], wherein we held handwriting exemplars obtained by brutality to be inadmissible under *Rochin* v. *State of California*, 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396].

It is evident that coercive methods or other improper police practices can be used to elicit incriminating evidence through several other forms than through statements. In each case the accused is persuaded to obtain or create evidence against himself. The fact that such evidence is usually obtained through statements, since this method requires the least action on the part of the accused and hence the least amount of persuasion, does not obviate the danger that coercive methods will be used to obtain evidence in other ways. On the contrary, because the obtaining or creating of nonverbal evidence generally requires more active participation on the part of the accused, there is a greater danger that coercive methods will be used to obtain such evidence. The right to counsel matures when the accusatory stage arises. (*Escobedo* v. *Illinois*, 378 U.S. 478, 492 [84 S.Ct. 1758, 12 L.Ed.2d 977].) Since counsel would be no less valuable in preventing coercion of evidence in forms other than statements, I cannot distinguish between the forms of incriminating evidence in determining the right to counsel at this stage.

Once it is concluded that the rules of *Escobedo* apply to obtaining evidence from the defendant through other forms

than through statements alone, it becomes necessary to determine whether the particular form in which the evidence is obtained falls within the privilege against self-incrimination. This is the real key to the problem here involved. The right to counsel serves no real purpose when a defendant is requested to give evidence which could be compelled by legal process since the police do not then have the incentive to resort to illegal methods of obtaining the evidence. Moreover, advice of counsel to refuse giving evidence which is not within the privilege would be of little help if the defendant has no legal right to refuse.

The majority, without determining whether the privilege against self-incrimination is applicable to handwriting exemplars, and relying primarily on *People* v. *Matteson, supra*, 61 Cal.2d 466, strongly indicate that it is not. (Majority opinion, fn. 1.) It should be mentioned that *Matteson* did not decide the question because the exemplars there involved were held to be inadmissible under *Rochin* whether or not the privilege against self-incrimination was applicable. (*People* v. *Matteson, supra*, at p. 469.) We have recently recognized that the question is an open one in this state. (*People* v. *Gilbert*, 63 Cal.2d 690, 708-709 [47 Cal.Rptr. 909, 408 P.2d 365].)

It is true, as the majority state, that not every aid that a defendant or suspect is required to give the prosecution violates the privilege against self-incrimination. An accused can be fingerprinted, photographed, and measured without his consent; he may be ordered to stand up in court for identification or to try on items of clothing; blood samples may be taken from a suspect without his consent if the means used to obtain them do not shock the conscience. (See *Holt* v. *United States*, 218 U.S. 245 [31 S.Ct. 2, 54 L.Ed. 1021]; *People* v. *Lopez*, 60 Cal.2d 223, 244 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Duroncelay*, 48 Cal.2d 766, 770 [312 P.2d 690].) In the above cases, however, the evidence sought relates to the physical characteristics of the defendant and is already in existence.[1] It is universally conceded that one can rely on the privilege in refusing to produce documents or chattels in the

---

[1]In *People* v. *Atchley*, 53 Cal.2d 160 [346 P.2d 764], the defendant was required on cross-examination to put on the shirt he had worn on the night of the killing, to show how he had carried the gun, and to demonstrate with an assistant district attorney his and his wife's movements during the struggle. We held that he had waived his privilege against self-incrimination as to these matters when he voluntarily raised them on direct eaxmination. (53 Cal.2d at pp. 173-174.)

face of a subpoena or other legal process. (*Boyd* v. *United States*, 116 U.S. 616, 622 [6 S.Ct. 524, 29 L.Ed. 746]; 8 Wigmore on Evidence (McNaughton Rev. 1961) § 2264.) There is a similarity between compelling a defendant to produce a document and compelling him to furnish a specimen of his handwriting for in both cases the witness is required to *actively procure* evidence against himself which is not then present. As stated by one court in dealing with handwriting exemplars, "the present case is more serious than that of compelling the production of documents or chattels, because here the witness is compelled to *write and create*, by means of the act of writing, evidence which does not exist, and which may identify him as the falsifier." (*Beltram* v. *Samson* (1929) 53 Philippine 570, 577.) It would be a strange paradox if a defendant could successfully invoke the privilege against self-incrimination in refusing to obtain existing samples of his handwriting, yet could be required to create similar samples by legal compulsion. Compelling a defendant to create samples of his handwriting can certainly not be regarded as *less* objectionable than compelling him to obtain samples already created. Since the samples can be used to prove that the accused wrote the forged checks, they are as much testimonial disclosures as are verbal admissions by the accused that he is the falsifier.

It is also unreasonable to hold or to imply that the police, without advising a defendant of his right to counsel, can obtain handwriting exemplars at the accusatory stage which show that he wrote the forged checks, when, admittedly, they could not request his verbal admission that he wrote those checks. A limitation of *Escobedo* to the elicitation of *statements* would encourage the police to obtain evidence from a defendant in other forms which are within the privilege against self-incrimination without advising him of his right to counsel. Admission of such evidence must therefore be held to constitute a violation of the right to counsel during the accusatory stage as established in *Escobedo*.

The question remains whether the error in the present case requires reversal. The evidence gained from the exemplars must be regarded as admissions contained in attempted ex-

---

*People* v. *Lopez, supra,* 60 Cal.2d 223, 244, contains dicta that a defendant may be required to speak for voice identification, but, even if this dicta were correct, there is no support for it in the cases cited as authority for this proposition. (See *People* v. *Duroncelay, supra,* 48 Cal.2d 766; *People* v. *Trujillo,* 32 Cal.2d 105 [194 P.2d 681].)

culpatory statements since it cannot be assumed that defendant had any intention of confessing in view of his consistent denials of having written the checks which brought about the prosecution. The error in admitting the exemplars is therefore subject to the test of prejudice. (*People* v. *Hillery*, 62 Cal.2d 692, 712 [44 Cal.Rptr. 30, 401 P.2d 382].)

Under the People's theory of the case, the conviction of defendant is based solely upon the premise that he was the person who had filled out the face of each of the three checks. Defendant consistently denied this both before the trial and as a witness at the trial. There is no direct testimony to the contrary. Obviously, the jury found that defendant had filled out the checks in question. In so finding, the jury must have relied upon and accepted the testimony of the expert that defendant was the person who had done the writing on the face of the checks. As already pointed out, the exemplars properly obtained were unsatisfactory, and apparently insufficient to convict. The expert's opinion that defendant wrote the checks must have been primarily based on the second set of exemplars illegally obtained. This requires a reversal because there is not only a reasonable possibility that the evidence complained of might have contributed to the conviction (*Fahy* v. *Connecticut*, 375 U.S. 85, 86 [84 S.Ct. 229, 11 L.Ed2d 171]) but there is a reasonable probability that a result more favorable to the defendant would have been reached if the evidence illegally obtained had not been erroneously admitted. (*People* v. *Watson*, 46 Cal.2d 818, 837 [299 P.2d 243].)

I would reverse the judgment.

Peek, J., concurred.

Appellant's petition for a rehearing was denied March 22, 1966. Peters, J., and Peek, J., were of the opinion that the petition should be granted.