[Crim. No. 10488.   Second Dist., Div. One.   May 25, 1966.]

THE PEOPLE, Plaintiff and Appellant, v. JAMES WALTER COLLINS, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Phill Silver for Defendant and Respondent.

WOOD, P. J.—By an information the defendant was accused of forgery. His motion, under section 995 of the Penal Code, to dismiss the information was granted and the case was dismissed. The People appeal from the order of dismissal.

The motion to dismiss was made upon the ground that there was no probable cause for the order of the committing magistrate holding the defendant for trial in the superior court. The asserted basis for the order of dismissal was that the magistrate had received in evidence an exemplar of defendant's handwriting which had been obtained by police officers after the arrest and without having advised the defendant of his right to counsel or his right to remain silent.

Section 995 of the Penal Code provides, in part, that an information must be set aside if the defendant has "not been legally committed by a magistrate," or if the defendant has "been committed without reasonable or probable cause."

The transcript of the preliminary examination shows, in substance, as follows:

On July 10, 1964, the defendant presented to a clerk in a Whittier store a check, dated July 9, 1964, for $96.69, payable to James Walter Ross, and purportedly drawn on a La Mirada bank on an account of "Whittier Sports Cars" by "R. Lee." The defendant presented the check (Exhibit 1) to the clerk and, in the presence of the clerk, wrote on the back of the check the name "James Walter Ross." The clerk cashed the check for the defendant—giving him $96.69.

Roger Lee, who formerly had been manager of the "Whittier Sports Cars" company and had been authorized to sign its checks, testified that the name "R. Lee" on the checks was not his signature; that the "printed check form" of Exhibit 1 was a form that had not been used by the company for the past two or three years; that the company's account in the La Mirada bank had been closed two or three years; and that he did not know the defendant.

Mr. Block, the present manager of the company, testified that the defendant had been an employee of the company during the first part of July 1964; and that no person asso-

ciated with the company was authorized to sign the name "R. Lee" on any check.

Deputy Sheriff Boyd, who was a booking officer in the identification section of the sheriff's office, testified, in substance, that an identification card, referred to as Exhibit 2 herein, was a handwriting card of the kind which the sheriff takes from defendants who come into the county jail on a forgery charge; the card, Exhibit 2, which bears the date October 29, 1963, contains some handwriting of a defendant who was in custody in the jail on that date;[1] the handwriting on "Side A" of the card, except the name and badge number of Deputy Boyd and the date, is the handwriting of a defendant who was then in custody; also, the handwriting on "Side B" of the card, below the words "County of Los Angeles, Sheriff's Department," is the handwriting of that defendant who was then in custody; the handwriting of that defendant was placed on the card on October 29, 1963, in the presence and at the request of the deputy; the deputy, in having the "card filled out" by that person, was acting under a departmental procedure of the sheriff's office; after that person had filled out the card, the deputy (witness) placed the thumb print of the person on the card, and then the deputy signed the card; the deputy did not recall whether the person who was then in custody protested regarding the matter of filling out and signing the card; the deputy did not use any force or make any threat or promise, in order to induce the person to write on the card, the deputy did not inform that person as to his constitutional rights, or inform him that the card might be used against him in a prosecution.

It was stipulated that Deputy Sheriff Bowman a handwriting expert, would testify that he had examined the handwriting on the reverse side of Exhibit 1 (check endorsement) and the handwriting on Exhibit 2 (the card), and that in his opinion the handwriting on the reverse side of Exhibit 1 (check endorsement) and the handwriting on Exhibit 2 (except the deputy's name and badge number, the date, and the writing below the words "County of Los Angeles") had been made by one and the same person.

Officer Hunter, a police officer in Whittier, assigned to the

---

[1] Apparently the defendant Collins was in jail on that date on some other charge. The present case arose in 1964 and the handwriting exemplar was made in 1963. When counsel for defendant was objecting to the use of the 1963 card, he said, among other things, that he was assuming the card "was filled out when the defendant was in custody on another matter. . . ."

fingerprint department at the police station, testified in substance that a fingerprint card, referred to as Exhibit 3, was a card of the kind which the police department used in taking fingerprints of every person who is booked at the police station; he (officer) placed the finger and palm prints of the defendant Collins on Exhibit 3; no force was used, nor was any threat made, to induce the defendant to place his fingerprints on that card; the only force used was that which was used in taking defendant's fingers and hands, putting them on the ink pad, and rolling them on the card; while proceeding to take the prints, the officer asked the defendant to raise his hands, and the defendant complied with the request.

Officer Johnson, a police officer in Whittier, testified that he had been a fingerprint officer in the identification bureau of the Whittier Police Department about two and one-half years and he had testified in court as an expert in the field of fingerprint identification; he compared the fingerprints on Exhibits 2 and 3, and in his opinion the prints on those exhibits were made by the same individual.

Counsel for defendant objected to the introduction in evidence of Exhibits 2 and 3, on the ground that they were acquired in violation of defendant's constitutional rights under the Fifth Amendment of the United States Constitution. The objection was overruled.

█ The trial judge stated that the motion to dismiss was granted on the basis that the handwriting exemplar was obtained from the defendant after his arrest, while he was in custody, and without advising him that he had a right to refuse to give the exemplar or that he had the right to counsel. The judge stated further that he believed that the principles involved in the *Escobedo* case[a] and the *Dorado* case[b] were applicable in the present case.

Appellant (prosecution) asserts that the handwriting and fingerprint exemplars were admissible in evidence. In the recent case of *People* v. *Graves,* 64 Cal.2d 208 [49 Cal.Rptr. 386, 411 P.2d 114] (decided after the briefs herein were filed), the defendant, a forgery suspect, made handwriting exemplars at the request of the officers, before and after the arrest; and the defendant had not been advised of his right to counsel or of any other constitutional rights. In that case it was held that the exemplars were admissible in evidence.

[a]*Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977].
[b]*People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

The court said therein: "There is no merit in the contention that the exemplars and statements given before arrest should have been excluded." The court also said: "The handwriting exemplars furnished after defendant had been in custody for three or four days were also admissible."

In the present case, the court erred in setting aside the information and dismissing the case.

The order is reversed.

Fourt, J., and Lillie, J., concurred.