[Crim. No. 11305. Second Dist., Div. Three. July 14, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED MANUEL JUAREZ, Defendant and Appellant.

Adley M. Shulman, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.—Defendant appeals from a conviction of assault with a deadly weapon. He was tried without a jury and probation was denied. Herewith a summary of the evidence:

*Laura Aguirre*: This witness, the victim of the assault, observed defendant "walking down the hill on the right of me" at 10 p.m. on August 5, 1964, about a house away from where she was living. Defendant acted as if he were picking something "up from the floor" and then all of a sudden he started to stab her. He cut her throat, her stomach, her breast, and her arm. He was wearing a T-shirt and another shirt over it, a blue plaid. He had on "some khaki pants." After the attack he started to run. Mrs. Aguirre screamed for her husband who chased after the suspect. She was hospitalized for eight days. She said that she had no doubt that defendant was her attacker. As defendant came down the hill she noticed his face because he "was a very bad looking face . . . ugly." There apparently was adequate artificial light for her to see.

*Lee Aguirre*: He heard his wife scream while he was watching television. He ran downstairs, and found her holding her stomach. She pointed at the defendant who was about ten to fifteen feet away and said: "That man cut me." He became angry and unsuccessfully chased defendant for about a mile, screaming for someone to help him. Defendant kept saying: "I

didn't do it. I didn't do it." The next day he went to a lineup at the Monterey Police Department. In the lineup defendant repeated the words: "I didn't do it," and the witness identified him.

This witness too recalled a plaid shirt, but could not remember whether the trousers were khaki or denim.

During the chase there was an occasion when defendant fell down and looked at the witness. There was no doubt in the witness' mind that "Juarez is the man."

During examination by the court the witness said, however, that he did not get a good enough look at defendant's face to enable him to make a positive identification until he heard him in the lineup; but he did remember his back and his hair.

*Officer Collins*: This police officer was on his way to work on August 5, 1964 when at 11:25 he saw defendant hiding behind a bush, not too far from the scene of the attack. The officer had heard about the assault. Since defendant more or less matched the description given to the officer he put him under arrest. Defendant gave a false name and produced a learner's permit corresponding to that name. A search of his person revealed a key ring and a beer can opener.

Officer Collins and an Officer O'Connor then returned to the vicinity of the crime to see if the keys fit any vehicle parked there. One such car was found. It was registered to "Juarez" and it contained an opened beer can.

Further testimony by the officer showed that there was a one-inch cut on defendant's left hand, in the area of the palm. After his arrest defendant, without being warned by Officer Collins, said that he had been waiting for a bus in San Gabriel, that some men attacked him and that he ran all the way to where he was picked up, about three miles away. There was a slight odor of alcohol about defendant.

The defense need not be described in detail. Defendant himself took the stand and maintained he had become so drunk and taken certain pills somebody had offered him that he became unconscious. He came to in jail. He testified that sometime before being taken into the lineup he was advised that anything he might say could be held against him.

The balance of the defense consisted of an effort to capitalize on certain discrepancies in the testimony of the People's witnesses with respect to the clothing worn by the assailant, testimony that defendant was not wearing khaki pants or a blue plaid shirt and failure, in spite of intensive efforts by the police, to locate the knife or the shirt which defendant, if

he was the culprit, had somehow discarded between the assault and his arrest.

The first argument of defendant, that the evidence was insufficient to identify him as the assailant, cannot in view of the above, be seriously considered. Mrs. Aguirre's testimony was clear and positive and so was that of her husband. Of course, the evidence of one witness is ample to support the judgment. (*People* v. *Salcido*, 186 Cal.App.2d 684, 687 [9 Cal.Rptr. 57].)

More troublesome is the claim that the evidence of Mr. Aguirre's identification at the police lineup, which appeared to depend for most of its probative force on the identification of defendant's voice, violated defendant's constitutional rights. The only argument presented in defendant's brief is that the lineup procedure coupled with defendant's compliance with the request that he repeat certain words, violates the so-called *Escobedo-Dorado* rule.[1] Nevertheless we have examined the recent decisions of the United States Supreme Court in *Miranda* v. *Arizona*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694], decided June 13, 1966, *Johnson* v. *New Jersey*, 384 U.S. 719 [86 S.Ct. 1772, 16 L.Ed.2d 882], decided June 20, 1966, *Schmerber* v. *California*, 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908] also decided June 20, 1966, to determine whether a claim that the lineup procedure violates defendant's privilege against self-incrimination could validly be asserted today, while not available at the time of trial. Were that the case we would of course follow the rule of *People* v. *Hillery*, 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 382] and *People* v. *Kitchens*, 46 Cal.2d 260, 262-263 [294 P.2d 17] and consider the matter from the point of view of self-incrimination. In our opinion there has been no change in the law making such a claim appear more tenable now than before. To the contrary *Schmerber* contains a statement to the effect that historically, both federal and state courts have usually held that the privilege against self-incrimination "offers no protection against compulsion to submit to fingerprinting, photographing or measurements, *to write or speak for identification*, to appear in court, to stand, to assume a stance, or to make a particular gesture." (Italics added.)[2]

[1]At the trial no objection whatever was made. The case was tried in December 1964, after a rehearing had been granted following the first opinion in *People* v. *Dorado*. We have previously held in *People* v. *Natividad*, 240 Cal.App.2d 244 [49 Cal.Rptr. 437] that a *Dorado* issue may be raised on appeal in cases tried during that period.

[2]Cases on both sides of the question whether or not it violates the privilege against self-incrimination to require a suspect to demonstrate

The problem of self-incrimination by voice identification is certainly no more settled today than it was when this case was tried or when it was submitted by us. *Malloy* v. *Hogan*, 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653], incorporating the privilege into the Fourteenth Amendment, had been established law for six months before the trial started. We therefore do not consider the question of self-incrimination.

We are thus in the identical position in which the Supreme Court of California found itself in *People* v. *Graves,* 64 Cal. 2d 208 [49 Cal.Rptr. 386, 411 P.2d 114]. After his arrest Graves had furnished the police with a handwriting exemplar which helped to convict him. For reasons not pertinent here the Supreme Court held that the issue of whether or not this violated his privilege against self-incrimination need not be decided, but it did rule on the *Escobede-Dorado* point.

Turning to the claim that the absence of counsel on the occasion when Graves furnished the sample violated the *Escobedo-Dorado* rule,[3] the court found no violation because "the right to counsel during police interrogation established in *Escobedo* v. *Illinois, supra,* is designed to prevent the use of coercive practices to extort confessions or other incriminating statements. . . . It does not protect a defendant from revealing evidence against himself in other ways."

We find it impossible to differentiate between handwriting samples and speaking for the purpose of voice identification. Each involves cooperation on the part of the suspect; while it may be more difficult to disguise a handwriting than a voice,[4]

his voice for purposes of identification are gathered in 16 A.L.R.2d 1322. The most recent case on the question is a decision by the Supreme Court of New Jersey, *State* v. *King*, 44 N.J. 346 [209 A.2d 110], holding, after a review of many of the authorities, that voice identification "is non-testimonial in character and therefore the privilege against self-incrimination is inapplicable." No California case is squarely in point. See *People* v. *James*, 218 Cal.App.2d 166, 168-170 [32 Cal.Rptr. 283], for a novel type of "vocal" lineup.

[3] We are proceeding on the assumption that the trial court was bound by the rule declared in *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], but that the apparently somewhat stricter requirements of *Miranda* v. *Arizona*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694], are not applicable to the trial or review of this case. The warning given to Juarez did not meet the *Dorado* standard. (*People* v. *Stockman*, 63 Cal.2d 494, 500-501 [47 Cal.Rptr. 365, 407 P.2d 277].)

[4] *People* v. *Graves, supra,* also makes the point that handwriting analysis is precisely the type of scientific crime investigation which *Escobedo* attempts to encourage. Obviously voice identification is not in the same category. The holding in *Graves* cannot, however, hinge on the persuasive nature of the evidence secured, if the means used are unconstitutional. It is the tree that poisons the fruit, not the wholesomeness of the fruit which cures the tree. (*People* v. *Buchanan*, 63 Cal.2d 880, 887

that distinction only applies if the suspect decides to cooperate to the extent that he writes or speaks anything at all. Each involves the creation of evidence which was not already in existence and each involves a tacit representation by the accused to the effect that he is not using a disguised style, in the one case, or a feigned voice in the other.

It cannot be denied that counsel, if available or furnished at that stage, can render a valuable service to his client. Whether or not a refusal to write or to speak would be admissible against the client as evidencing a consciousness of guilt—as to which we need not express an opinion—most attorneys would recognize that such evidence of a refusal, particularly if explained as being based on advice of counsel, is generally not as harmful as the positive evidence which compliance with the request by the police can furnish. The short answer is that given by the Supreme Court in *Graves*: ▇ the mere fact that an accused is entitled to the aid of counsel at a particular point and is not advised of his right to such assistance does not bar the admission of all evidence which might not have come to light had he talked to an attorney.[5] The *Escobedo-Dorado* rule must be applied in the light of its purpose.

▇ Defendant attacks not only the voice identification at the lineup, but the lineup in the absence of counsel *per se*. We are bound by the holding of our Supreme Court in *People* v. *Gilbert*, 63 Cal.2d 690, 708-709 [47 Cal.Rptr. 909, 408 P.2d 365], which is squarely opposed to defendant's contention.[6]

▇ We have not overlooked the statement made by defendant to the officer at the time of his arrest to the effect that he had been attacked and had run from his pursuers. This was at

---

[48 Cal.Rptr. 733, 409 P.2d 957]; *People* v. *Bilderbach*, 62 Cal.2d 757, 767-768 [44 Cal.Rptr. 313, 401 P.2d 921]; *Wong Sun* v. *United States*, 371 U.S. 471, 485 [83 S.Ct. 407, 9 L.Ed.2d 441].)

[5]Federal courts in decisions filed before *Miranda* v. *Arizona*, have not been in agreement on the problem under discussion. In *United States* v. *Denno*, 355 F.2d 731, it was held not to violate the defendant's rights to take him after arraignment and without counsel to the hospital room of one of his victims, who there identified him, partly, it appears, on the basis of words he spoke at the request of the police. (*Ibid.*, p. 743.) *Wade* v. *United States*, 358 F.2d 557, comes to a different conclusion. It must be pointed out that since *Johnson* v. *New Jersey* holds that *Miranda* v. *Arizona* is not retroactive and that since we are not faced with the facts of *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], we are not compelled to view the problem as if the mandates of *Miranda* were applicable. We discuss in the light of our Supreme Court's interpretation of *Escobedo* in *Dorado* and *Graves*.

[6]We recognize that the Supreme Court of the United States has granted certiorari in *Gilbert* and has specified the issue of the right to have an attorney present at the lineup as one of the points to which the grant of the writ was limited.

odds with his testimony at the trial that he had a complete blackout after drinking and taking pills and did not come to until he was arrested. Under the circumstances of this case, particularly in view of the testimony that he was alert enough to give a false name, we do not think admission of the statement was prejudicial.

Finally, complaint is made of the search of the car at some time after the arrest and several blocks away. It is argued that this brings the case within the principle of *People* v. *Burke*, 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67].

As far as the finding of the beer is concerned, this was brought out by defense counsel and fit in with his theory of intoxication. Whether or not the entry into the car and the matching of the keys found in defendant's possession with the lock of the car constituted a search, need not be decided. There was no objection. (*Robison* v. *Superior Court*, 49 Cal.2d 186, 187-188 [316 P.2d 1].) The failure to object is particularly important in this case because it should have been a simple matter for the People to prove that the car which was found on the street belonged to defendant, without resorting to the circumstantial evidence that the keys fit the lock. While such evidence would not have indicated as strongly, as did the keys, that it was defendant personally who left the car where it was found, that factor added very little to the case.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 7, 1966.