[No. AO17183. First Dist., Div. One. Feb. 9, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
CALVIN E. BENNETT, Defendant and Appellant.

**COUNSEL**

LeRue Grim for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Thomas A.

Brady and Mark S. Howell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Bennett pleaded guilty to charges of possession of cocaine (Health & Saf. Code, § 11350), a felony, and driving a motor vehicle while under the influence of alcohol and drugs (Veh. Code, § 23102, subd. (a)), a misdemeanor. Imposition of judgment was suspended and he was placed upon conditional probation. He appeals from the order granting probation, which he terms "judgment" in his notice of appeal. His only appellate contention is that the trial court erroneously denied his motion to suppress certain evidence, claimed to be the fruit of his unlawful detention and arrest, on his Penal Code section 1538.5 suppression hearing.

For reasons as follow we find no merit in the contention and affirm the judgment.

A highway patrol officer about 2:30 o'clock one morning observed an automobile traveling upon a freeway in such a manner as to swing "into the south guard rail and [swing] back to prevent the vehicle from striking the wall." The car then "crossed three lanes accelerating to 70 miles per hour"; and passed many other automobiles. As it continued, it was "weaving" on both sides of a lane marker. It continued to be so driven for about one and a half miles, whereupon its driver was ordered to, and did, turn onto an off ramp. Upon being stopped a short distance beyond that point the car's driver, who was defendant Bennett, emerged from it. As he "stood up he stumbled back into the open car door." Asking for his driver's license, the officer observed a strong odor of alcohol, bloodshot watery eyes, and slurred speech. The officer "explained" Bennett's violation to him and told him why he had been stopped. And a field sobriety test was then conducted.

The field sobriety test, as explained by the officer consisted of the following: "[1] The subject is requested to stand erect with his heels and toes right tight together. He is asked to leave his arms at his sides, lean his head back and shot [*sic* 'shut'?] his eyes and stay in position approximately ten or 15 seconds. . . . [2] The subject is requested to just stand with one foot raised off the ground and then repeat it with the other foot raised off the ground. . . . [3] The subject is requested to just place one foot right directly in front of the other foot touching heel to toe. . . . The fourth test was walking heel to toe. . . . It's basically the same as standing heel to toe with the difference you take steps each time placing one foot in front of the other touching heel to toe as you walk a straight

line. . . . The last test, No. 5, was the hand pat. . . . The subject is requested to use whatever hand he feels most comfortable with and strike with the palm down, lift, turn and strike the back of his hand, and keep repeating the test and building up his speed. . . ."

Bennett "flunked" all but the first of the five tests. He was not until then placed under arrest, for driving a motor vehicle while under the influence of alcohol, in violation of Vehicle Code section 23102, subdivision (a).

Bennett makes no contention that he was arrested, following the field sobriety tests, on less than probable cause. He argues instead that the highway patrol officer's detention of him and administration of the tests, *before* his arrest on probable cause, was proscribed by the Fourth Amendment.

Closely apposite to the contention, we think, is the wise and timely comment of Chief Justice Traynor in *People* v. *Sudduth* (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]: "In a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient, and accurate system of detection, enforcement and, hence, prevention. . . . A wrongful refusal to cooperate with law enforcement officers does not qualify for such protection. A refusal that might operate to suppress evidence of intoxication, which disappears rapidly with the passage of time . . . should not be encouraged as a device to escape prosecution."

A like contention was made by the defendant in *Whalen* v. *Municipal Court* (1969) 274 Cal.App.2d 809 [79 Cal.Rptr. 523]. We quote at length from the Court of Appeal's opinion (pp. 811-812) of that case:

"Defendant contends that the evidence obtained from the field sobriety tests should be suppressed because it violates both the privilege against self-incrimination of the Fifth Amendment of the United States Constitution and the right to counsel as guaranteed by the Sixth Amendment. These contentions are interrelated and must be considered together.

"Our initial inquiry must be directed to whether the evidence secured as a result of field sobriety tests is the type which the Fifth Amendment of the Constitution of the United States is designed to protect. As stated in *Miranda* v. *Arizona, supra,* 384 U.S. at page 439 [16 L.Ed.2d at p. 704], '[W]e deal with the admissibility of *statements* obtained from an individual who is subjected to custodial police interrogation and the necessity for procedures which assure that the individual is accorded his privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself.' (Italics added.) When discussing the type of evidence which the Fifth Amendment protects, courts have repeatedly distinguished between 'testimonial' and 'physical' evidence.

(See *Schmerber* v. *California,* 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], involving chemical blood tests; *People* v. *Ellis,* 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393], involving voice identification; *People* v. *Sudduth,* 65 Cal.2d 543 [55 Cal.Rptr. 393, 421 P.2d 401], involving breathalyzer test; *People* v. *Graves,* 64 Cal.2d 208 [49 Cal.Rptr. 386, 411 P.2d 114], involving handwriting exemplars.)

"In *Schmerber* v. *California, supra,* the defendant was forced to subject himself to a blood test against his will to determine if he had been driving an automobile while under the influence of intoxicating liquor. The United States Supreme Court stated at pages 764, 765 [16 L.Ed.2d at pp. 916-917]: 'The distinction which has emerged, often expressed in different ways, is that the privilege [against self-incrimination] is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it. . . . Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds.'

"We adopt the rationale of *Schmerber* v. *California, supra,* for it is apparent that if evidence obtained over a defendant's objection from a blood test is not covered by the Fifth Amendment, assuredly evidence obtained by an officer in observing a defendant perform the simple physical exercises required in a field sobriety test does not fall within the protection of the privilege."

We are aware that *Whalen* v. *Municipal Court* responded to a contention of invalidity based on Fifth Amendment and Sixth Amendment grounds, while here the contention concerns the Fourth Amendment only. But the tests of reasonableness, as explicated by Chief Justice Traynor in *People* v. *Sudduth, supra,* and as in *Schmerber* v. *California, supra,* 384 U.S. 757, are manifestly applicable also to field sobriety tests such as with which we are here concerned.

On the related issue of "involuntariness," also raised by Bennett, we observe that *Whalen* v. *Municipal Court* found no constitutional violation although such a field test was described as an "incriminating product of compulsion." We abide by the express and implied holdings of that authority. ■ Normally a Court of Appeal will follow prior decisions of its own or other districts or divisions. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 667, p. 4580.) Moreover, as stated by *Whalen* v. *Municipal Court,* the high court in *Schmerber* v. *California* found no constitutional transgression where "the defendant was forced to subject himself to a blood test *against his will* to determine if he had been driving an automobile while under the influence of intoxicating liquor." (The italics are ours.)

■ It is recognized, of course, that a motorist may not be stopped by a police officer for no cause, or for harassment, and given such a field sobriety test. Instead we are of the opinion that the criteria of *In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957], for a police officer's temporary stop or detention of a suspect, is reasonably applicable to "drunken driver" suspects: It follows:

■ "[A] reasonable suspicion of involvement in criminal activity will justify a temporary stop or detention. Under that standard, if the circumstances are 'consistent with criminal activity,' they permit—even demand—an investigation: the public rightfully expects a police officer to inquire into such circumstances 'in the proper discharge of the officer's duties.' . . . No reason appears for a contrary result simply because the circumstances are also 'consistent with lawful activity,' as may often be the case. The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' . . . The citizen's undoubted interest in freedom from abuse of this procedure is protected—so far as it is within the law's power to do so—by the correlative rule that no stop or detention is permissible when the circumstances are not reasonably 'consistent with criminal activity' and the investigation is therefore based on mere curiosity, rumor, or hunch."

■ Here the temporary stop or detention of Bennett was manifestly based on much more than "mere curiosity, rumor or hunch." Indeed, as we view the facts and circumstances then apparent to the officer, there was probable cause for Bennett's arrest, without the results of the field sobriety tests.

The order granting probation, termed judgment in the notice of appeal, is affirmed.

Racanelli, P. J., and Newsom, J., concurred.