Clayborne **BYNUM**, Appellant

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14403.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 17, 1958.

Decided Dec. 15, 1958.

Petition for Rehearing In Banc Denied
Jan. 20, 1959.

Mr. Henry Lincoln Johnson, Jr., Washington, D. C., for appellant.

Mr. Nathan J. Paulson, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Carl W. Belcher and Thomas A. Flannery, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY and WASHINGTON, Circuit Judges, and HASTIE, Circuit Judge, United States Court of Appeals for the Third Circuit.*

HASTIE, Circuit Judge.

This is an appeal from a conviction of robbery. D.C.Code § 22–2901 (1951). A principal issue is whether the court below erred in admitting into evidence certain fingerprints which had been obtained from the accused while he was detained pursuant to an allegedly illegal arrest. The circumstances here are such as to require us to examine the rationale and to judge the reach of authoritative decisions which, in other circumstances, have held evidence obtained through illegal arrest and detention to be inadmissible.

Appellant was arrested on an occasion when he had come voluntarily to a police station to make inquiry about his brother who was being detained there. He was arrested without warrant and, as we shall demonstrate later, the record does not disclose probable cause for believing he had committed a felony. It is not disputed that almost immediately after arrest appellant was taken to police headquarters for booking proceedings which included the taking of his fingerprints. He was later indicted, and at his subsequent trial for robbery these fingerprints were introduced in evidence and became an important part of the proof that certain other fingerprints, said to have been found at the scene of the crime, were appellant's fingerprints. These simple facts define the issue in controversy.

In admitting the fingerprints the trial judge appears to have thought it sufficient that the evidence was plainly relevant and that no reason appeared to doubt its trustworthiness. Certainly appellant does not deny that he was fingerprinted during his detention. And a police officer called as a witness duly identified the prints offered in evidence as those taken from appellant's fingers. While there could have been some mistake or misrepresentation in this connection this is a risk incidental to all identification of objects offered in evidence. There can be no doubt that the identification of these fingerprints was quite adequate and their relevancy as an essential link in a chain of evidence connecting the accused with the crime charged was obvious.

But there remains the question whether the fact that an illegal arrest enabled the police to take these fingerprints while the suspect was illegally detained is in itself and without more a sufficient ground for excluding them from evidence. The court below thought it was not. We think it was.

Here it becomes important to determine the rationale of those decisions of the Supreme Court which, in other circumstances, have excluded evidence as the product of unlawful arrest and detention. It is well settled that an article taken from the person of an individual on the occasion of an illegal arrest is not admissible in evidence against him although it is relevant and entirely trustworthy as an item of proof. United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Bolt v. United States, 55 App.D.C. 120, 2 F.2d 922. Again, if the police have obtained a statement from an accused person during his illegal detention, no showing that the

---

* Sitting by designation pursuant to the provisions of Section 291(a), Title 28 U.S.Code.

statement has been obtained without coercion and accurately recorded can make it admissible, although it may seem to be a trustworthy and patently relevant voluntary statement. Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. In these situations it is deemed a matter of overriding concern that effective sanctions be imposed against illegal arrest and detention and the risks of overreaching inherent in such action. Even though highly probative and seemingly trustworthy evidence is excluded in the process, this loss is thought to be more than counterbalanced by the salutary effect of a forthright and comprehensive rule that illegal detention shall yield the prosecution no evidentiary advantage in building a case against the accused. All of this is bottomed on the Constitution itself. The Fourth Amendment makes protection of the individual against illegal seizure or arrest a constitutional imperative. In the cited cases judicial authority over the manner on which justice shall be administered is exercised in a way calculated to implement the constitutional guarantee.

True, fingerprints can be distinguished from statements given during detention. They can also be distinguished from articles taken from a prisoner's possession. Both similarities and differences of each type of evidence to and from the others are apparent. But all three have the decisive common characteristic of being something of evidentiary value which the public authorities have caused an arrested person to yield to them during illegal detention. If one such product of illegal detention is proscribed, by the same token all should be proscribed. Cf. United States v. Klapholz, 2 Cir., 1956, 230 F.2d 494, certiorari denied 351 U.S. 924, 76 S. Ct. 781, 100 L.Ed. 1454. So we find in the Di Re case, the Upshaw case, the Mallory case and the case at hand a compelling common reason for reaching the same result. Therefore, we conclude that the court below erred in admitting the fingerprints in evidence.

We now turn to the demonstration of the fact, heretofore assumed, that the record discloses no reasonable ground for belief on the part of the arresting officer that appellant had committed a felony. The arresting officer was a policeman on duty at a police station. From a teletype message he had learned that a certain automobile was sought in connection with a robbery. Later, he learned that one Kenneth Bynum had been arrested driving the car and brought to that police station. Thereafter, the appellant, identifying himself as Clayborne Bynum, brother of Kenneth, telephoned the station and was told to come there if he wanted information about his brother's arrest. He came to the station, admitted owning the car in question and stated that he had loaned it to his brother. There is no indication that the arresting officer had information concerning the circumstances of any crime except that a particular car was wanted and had been seized in connection with a robbery. So far as now appears, he did not even know what robbery was involved, much less any of the alleged circumstances, and made no inquiry before arresting the visitor. Nor is it established that he acted at the direction or request of any officer who had reasonable ground for believing appellant had committed a felony. We conclude, therefore, that the present record discloses no probable cause for arresting appellant on a felony charge. Cf. Whitley v. United States, 1956, 99 U.S.App.D.C. 159, 237 F.2d 787; Contee v. United States, 1954, 94 U.S. App.D.C. 297, 215 F.2d 324; United States v. Castle, D.C.1955, 138 F.Supp. 436. Indeed, unless there are additional circumstances not now in evidence, this seems a rather plain case of arresting on suspicion only and thereafter establishing probable cause for the arrest, a procedure too often judicially condemned to require discussion here. As the Supreme Court has recently put it: "It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should

charge before a committing magistrate on 'probable cause.' " Mallory v. United States, 354 U.S. at page 456, 77 S.Ct. at page 1360.

Another matter calls for brief discussion. That is the manner in which this point arose and was decided. The record shows that early in the government's case an officer of the Metropolitan Identification Bureau testified that he took the fingerprints in question from Bynum on the day of his arrest. The prosecutor then offered the prints in evidence. This followed:

> "The Court: They may be admitted.
>
> "Mr. Johnson: [Defense Counsel]: May I see them?
>
> "The Court: I think we have to proceed, Mr. Johnson."
>
>      *    *    *    *    *    *
>
> "Mr. Johnson: May I cross-examine before you admit it?
>
> "The Court: Just a moment. No, I have admitted Government Exhibit 1 for Identification into evidence."

Technically, this colloquy did not include any formal objection to the fingerprints as offered though it did disclose that counsel wished to explore a matter concerning admissibility. Somewhat later, at the conclusion of the government's case, counsel for the defense moved for a directed verdict. In the ensuing colloquy the court and counsel discussed the question whether fingerprints taken from the accused after his arrest were inadmissible as the product of an illegal arrest. Part of that discussion was as follows:

> "The Court: I do not care whether he was properly or improperly arrested, because there has been no confession from the defendant offered in evidence.
>
> "Mr. Johnson: His fingerprint was taken from him at that time.
>
> "The Court: Well, in the first place * * * I would hold that it was probable cause for the arrest and the arrest was legal.
>
> "The Court: * * * I think this was a valid arrest, and irrespec-

tive of that, the fingerprints were properly obtained."

Still later, during the defense case an attempt was made to develop more evidence concerning the circumstances of the arrest.

> "Q. It is your testimony, Officer, that you had Bynum arrested? A. Yes, sir.
>
> "Q. On what grounds did you have him arrested?
>
> "The Court: I will exclude that; this is irrelevant."

Thus, counsel explicitly made the point that the fingerprints were inadmissible because they were the product of an illegal arrest. He sought to support that contention through additional testimony about the circumstances of the arrest. The court was peremptory to cutting off any elaboration of the defense contention. In the circumstances it was not essential for counsel to persist further. In any event, the court took two positions; first, that there was enough evidence as to the circumstances of the arrest to show that it was legal, and second, that the legality or illegality of the arrest was not relevant to the admissibility of the fingerprints. And the ruling was so summary that we cannot be sure whether the prosecution itself may not have been deprived of a valuable opportunity to show factually that the arrest was legal.

■ Finally, it has been suggested that the controversy about a particular set of fingerprints here is much ado over very little because it would have been simple and proper to have taken appellant's fingerprints in court during trial in order to compare them with the prints said to have been found at the scene of the crime. It is also said that appellant's fingerprints, taken on a proper occasion, were in the possession of the Federal Bureau of Investigation and that these prints could properly have been used in this case. But this argument, like the argument of trustworthiness already discussed, simply does not meet the point. It bears repeating that the matter of primary judicial concern in all cases of

this type is the imposition of effective sanctions implementing the Fourth Amendment guarantee against illegal arrest and detention. Neither the fact that the evidence obtained through such detention is itself trustworthy or the fact that equivalent evidence can conveniently be obtained in a wholly proper way militates against this overriding consideration. It is entirely irrelevant that it may be relatively easy for the government to prove guilt without using the product of illegal detention. The important thing is that those administering the criminal law understand that they must do it that way.

We conclude that appellant is entitled to a new trial with opportunity accorded the parties to develop fully the facts which will establish whether the fingerprints in dispute were the product of an illegal arrest. Of course this issue will not arise if the prosecution elects to proceed without using the fingerprints taken at the time of appellant's arrest.

Reversed and remanded for further proceedings consistent with this opinion.