[Crim. No. 15496. Second Dist., Div. One. May 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MANUEL CLEVELAND BROWN, Defendant and Appellant.

Philip J. Catanzaro, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of robbery, second degree, and acquitted of kidnaping and attempted rape. He appeals from the judgment.

Around 6 p.m. on January 2, 1968, in a well lighted residential area, defendant grabbed Mrs. Webster and pulled her into an alley; she screamed and struggled but defendant tore off most of her clothing except her skirt, knocked her purse to the ground spilling the contents, including a dollar bill, and pushed her to the ground; she tried to scream but he threatened to kill her, put his hand over her mouth and tried to choke her. Exposing himself he got on top of Mrs. Webster who was lying on the ground on her back; meanwhile he looked over and saw the dollar bill, picked it up, got off of her and ran down the alley; he had no act of intercourse. She called police and two officers came to her home; she described her assailant as 20 to 25 years of age, between 5 feet 10 inches and 6 feet tall, 150 pounds and wearing ''process'' hair, dark clothing and black gloves.

On either January 3 or 4 officers showed Mrs. Webster 55 pictures of male Negroes; defendant's photograph was not among them; she could identify none as being her assailant. Two or three weeks later police showed her two photographs of defendant—the top half of his body in profile and ''straight on,'' and full body in profile and ''straight on''; he had ''process'' hair; they asked her to look at the photographs, she did so and recognized him as her assailant; the officers said nothing but thanked her and departed.

A week and a half later at a police lineup of five male Negroes approximately all the same size except for one who was shorter, Mrs. Webster identified defendant; the officers had not told her that the person she identified from the two photographs would be in the lineup. In the lineup defendant was not wearing ''process'' but short hair; however she testified that he looked like the person she identified in the photograph and like the person who attacked her.

Defendant's mother and several witnesses testified that he was elsewhere at the time of the attack. He testified he was arrested on January 22; the police informed him of his right to counsel at the lineup, which he waived; he was placed in a lineup with four other male Negroes second to the end to the left in the lineup—the first, in his late twenties was 5 feet 10

inches tall; the second, 20 years old, was between 5 feet 6 and 5 feet 7; the third, in his thirties, was 5 feet 10; he (defendant) was the fourth and the fifth was in his early twenties, the same height. Defendant is 22 years old, 5 feet 11 and weighs 141 pounds. Officer Jenks called by the defense testified that Mrs. Webster had described her attacker as a male Negro, about 20, approximately 5 feet 10 inches to 6 feet tall, weighing approximately 150 pounds, having black natural hair and wearing dark clothing, a dark jacket and black gloves.

 Appellant claims that it was unfair for police to submit his photographs singly to Mrs. Webster because it gave her no choice, and had they been shown with others depicting men with "process" hair she might not have identified him. He relies on *Stovall* v. *Denno*, 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], wherein the Supreme Court commented that "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." But the court did not hold that showing a suspect individually to a victim is inherently unfair for it continued, "However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, . . ." (p. 302 [18 L.Ed.2d at p. 1206]). Recounting that the victim, who had been badly injured in the attack, required surgery and might die, was unable to visit the jail to view a lineup thus the police took Stovall to the hospital room, the court held that the circumstances were such as to warrant the showing of defendant individually to her. Later in *Simmons* v. *United States,* 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967], the court recognized that danger of incorrect identification "will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, . . ." (p. 383 [19 L.Ed.2d at p. 1253]) but said it "may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's [pre-trial photographic procedure] potential for error" and held "that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (P. 384 [19 L.Ed.2d at p. 1253].) Appellant must demonstrate that the

pre-trial photographic identification procedure resulted in such unfairness that it infringed his right to due process of law. (*Stovall* v. *Denno*, 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1204, 87 S.Ct. 1967]; *People* v. *Haston*, 69 Cal.2d 233, 258 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Caruso*, 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Feggans*, 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]); he has failed to sustain that burden and our examination of the record convinces us that the photographic identification procedure comported with due process. There is no evidence that the police in any manner suggested that defendant committed the crime (they merely showed her the two photographs) or "that the pictures were used to prime the witnesses to identify defendant" (*People* v. *Feggans*, 67 Cal.2d 444, 449 [62 Cal.Rptr. 419, 432 P.2d 21]) or that Mrs. Webster was told that the man she identified was this defendant or that he would be included in the lineup from which she also identified him.

The overriding consideration here is that the record establishes without any doubt that Mrs. Webster's in-court identification of defendant was based solely on a source independent of any pretrial identification either by photograph or lineup. (*United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *People* v. *Caruso*, 68 Cal.2d 183, 189-190 [63 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Bonville*, 268 Cal.App.2d 107, 113-115 [13 Cal.Rptr. 741]; *People* v. *Slutts*, 259 Cal.App.2d 886, 892-893 [66 Cal.Rptr. 862].) The assault occurred in a residential area lighted by street lamps and the victim had ample opportunity to observe defendant— she had struggled with him for some time before he got on top of her facing her. She testified "I just know that I would always know him if I ever saw him again. I knew that." Shortly after the attack she fairly accurately described defendant, later identified him from two photographs, and then pointed him out in the lineup of five male Negroes even though she was not told that the person she had identified as her assailant from the two photographs would be in the lineup and even though he was then wearing his hair short. She further testified that she had in her mind a picture of the man as he appeared to her that night, January 2, and, without considering the photographs and lineup, the man (defendant) in court is the same man. Asked if she was able to "divorce" the lineup and photographs from her mind she said, "Yes. I can remember him"; again she was asked if defendant was the man, and she answered, "Yes." On recross-examination

she was asked if the lineup influenced her in any way and answered ''No. I had—I mean I knew—I always knew I would know what he looked like if I saw him again,'' then if the photograph influenced her identification of defendant in court, and she responded ''No, it didn't . . . I remembered how he looked. If I hadn't seen the photograph and I had seen him again, I'd still know him.''

■ Finally, appellant argues that because the People did not show that he was advised of his right to have counsel present at the time of the lineup and waived the same he was entitled to have the testimony of the lineup and the in-court identification stricken (*Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]) because it was error for the court to admit the in-court identification without first determining that it was based on an independent source and not on the ''illegal'' lineup.

In *Gilbert* and *Wade* nothing in the record showed that defendants had been advised of their right to counsel at the lineup or waived such right; under such circumstances the court said that an in-court identification must be excluded unless it is established by ''clear and convincing evidence'' that it had an independent source or was based upon observations of the accused at the scene of the crime. (*United States* v. *Wade,* 388 U.S. at p. 240 [18 L.Ed.2d at p. 1164]; *Gilbert* v. *California,* 388 U.S. at pp. 272-273 [18 L.Ed.2d at pp. 1186-1187].) Here, prior to Mrs. Webster's in-court and lineup identification testimony, the People laid no foundation that defendant was advised of his right to counsel at the lineup and waived the same; the officer who conducted the showup was not a witness. But if we are to assume this was error as urged by appellant we can only hold that it was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].) First, defendant himself established that the lineup was not ''illegal.'' On direct examination he testified that he was in fact given his constitutional rights by the officers before entering into the lineup and waived the same, ''they told me that I could have a lawyer present, you know, my constitutional rights, before I answer questions . . . I told them no, I didn't mind, I'd go in the lineup.'' Second, ''clear and convincing evidence'' establishes that the identification by Mrs. Webster at the trial was based on a source independent of the photographs or the lineup. It serves no useful purpose to recount her testimony

but there is no doubt that her in-court identification was "divorced" from either the lineup or the photographs and based entirely upon her observations of defendant during the commission of the crime. This was even admitted by defense counsel who, when he moved to strike Mrs. Webster's testimony, said "Now, it is quite clear that Miss Webster has testified that she did not and is not basing her identification of the defendant upon the lineup or the person she saw in the lineup." The factors outlined in *Wade* for consideration by the court in applying the test to determine if an in-court identification is based on a lineup or on an independent source are here present in the evidence and they demonstrate no relation between the lineup and the in-court identification. Mrs. Webster was the victim, an eyewitness, and she had ample opportunity under favorable circumstances to observe defendant in the course of the criminal act; there is only slight discrepancy between her description of defendant to the officer immediately after the robbery and defendant's actual description; she identified no other person by photograph or otherwise prior to lineup; she identified by photographs defendant prior to the lineup; she did not fail to identify defendant on any prior occasion and the lapse of time between the robbery and the lineup was not substantial. (*United States* v. *Wade*, 388 U.S. at p. 241 [18 L.Ed.2d at p. 1165].)

The judgment is affirmed.

Fourt, Acting P. J., and Thompson, J., concurred.