[Crim. No. 2736. Fourth Dist., Div. Two. Sept. 22, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT HENRY HERNANDEZ, Defendant and Appellant.

482

**COUNSEL**

James E. Neal, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey C. Freedman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUFMAN, J.**—Defendant was charged by information with one count of armed robbery in violation of Penal Code, section 211. After trial by jury, he was found guilty as charged of first degree robbery, probation was denied, and he was sentenced to state prison for the term prescribed by law. Defendant appeals from the judgment of conviction.[1]

### Contentions

On appeal, defendant makes the following contentions:

(1) Defendant's pretrial identification was so unnecessarily suggestive that it tainted his in-court identification and deprived him of due process of law.

(2) The district attorney was guilty of prejudicial misconduct in his opening statement to the jury.

(3) The trial court committed prejudicial error in admitting finger-print evidence obtained as the result of the unlawful arrest of defendant.

(4) The trial court committed prejudicial error in denying defendant's motion for mistrial because of the trial judge's comments on the applicability of a jury instruction.

### The Facts

On June 2, 1966, at about 8:30 p.m., a market located in the City of Cypress, County of Orange, was the object of a robbery. Mr. Keaton was an employee of the market and was on duty at the time. He was alone. He was working in the back of the store when he heard the door squeak, indicating to him that someone had just entered the market. He immediately went to the front of the store where the counter was located. While standing at the counter, he saw a man walking toward him carrying a quart bottle of beer. The man appeared to be under the age of 21, and Mr. Keaton asked the man for identification. The man answered that he did not have any and asked to speak to the owner. Mr. Keaton replied that the owner was not present. The man then pulled a gun and ordered Keaton to lie on the floor. Keaton complied, and while he was on the floor he heard the cash register being emptied. There had been currency

---

[1]By order dated May 8, 1967, we dismissed defendant's appeal under the provisions of rule 17a of the Rules on Appeal. However, pursuant to an order of the California Supreme Court filed July 9, 1969 in Crim. No. 13502, the order of dismissal was vacated and set aside by this court on July 11, 1969, and the remittitur was recalled so that defendant's appeal might be considered on its merits.

in the register, but after the man left, the currency was gone and only change remained.

After the robbery, the quart bottle carried by the robber to the counter was found sitting on the counter. Subsequently an identification technician employed by the Orange County Sheriff's Department obtained a partial fingerprint from the bottle. At trial, over the objection of defendant's counsel set forth in greater detail below, the technician testified that this partial print corresponded to the fingerprints of defendant. The exemplar of defendant's fingerprints was apparently obtained during his detention following his arrest.

Although Keaton observed the robber for only a few moments, he had never been involved in a robbery before and the appearance of the robber made a lasting impression on his mind. He noted and recalled that the robber was a man of Mexican ancestry, about 5 feet 10 inches tall; that he was about 19 years of age; that he was wearing a long-sleeved shirt, blue in color, buttoned down the front and tucked into dark pants; that he was wearing large "bubble-type" sunglasses that did not cover his eyebrows; that his eyebrows were unusually large; that he wore his hair combed back; and that when he talked, his mouth was "kind of tight and nervous."

Sometime after the robbery, Mr. Keaton was telephoned by a policeman and asked to come down to the police station for the purpose of looking at some photographs and observing a lineup. Upon arriving at the station, he was shown mug shots of six different men of Mexican ancestry. He was told that the photographs were taken a considerable time before, approximately 14 months. He selected a photograph of defendant but was unable to make a positive identification because the person in the photograph wore a beard. Thereafter, the police told Mr. Keaton that they wanted him to see a lineup. They said they had a suspect but did not say they had the robber. They told Mr. Keaton nothing about the man prior to the lineup. Through a two-way mirror [*sic*] Mr. Keaton observed six persons, all of Mexican ancestry, several of whom resembled defendant. All of them were wearing jail clothing. Mr. Keaton immediately made a positive identification of defendant as the robber. He had no difficulty at all in recognizing him.

During the People's case in chief, Mr. Keaton testified to viewing the photographs, his identification of defendant at the lineup and, also, his identification of defendant at the preliminary hearing. Additionally, he made an unequivocal in-court identification of defendant as the robber.

Miss Workman, who lived about two blocks from the market, testified

that at about 8:30 p.m. on June 2, 1966 she observed near the market a green 1958 Chevrolet convertible with a top, dirty-white in color. The top had a "sort of a black patch up above by the driver's side" and there was a dent in the left front hubcap. She observed that the car had two occupants, but she could not identify either of them, except to say that the person on the driver's side was a blond man. She later saw a vehicle at the Santa Ana Police Department and identified it as the same one that had been near the market. Although reference was made in the prosecutor's opening statement to facts tending to connect this automobile with defendant, no such evidence was introduced at trial.

Although defense counsel had at one point indicated his intention to object to the introduction of such evidence on the ground that it was a product of an unlawful arrest and search, on the last day of the trial a .22 caliber pistol together with a number of .22 caliber cartridges were introduced into evidence by stipulation with the further stipulation that they were in the possession of defendant on the night of June 3, 1966.

The defense offered no evidence.

### The Pretrial Identifications

The pretrial identifications all took place prior to June 12, 1967, and the rules announced in *United States* v. *Wade,* 388 U.S. 218, 236-237 [18 L.Ed.2d 1149, 1162-1163, 87 S.Ct. 1926] and *Gilbert* v. *California,* 388 U.S. 263, 272 [18 L.Ed.2d 1178, 1186, 87 S.Ct. 1951] are therefore inapplicable. (*Stovall* v. *Denno,* 388 U.S. 293, 296-301 [18 L.Ed. 2d 1199, 1203-1206, 87 S.Ct. 1967, 1969-1972]; *People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]; *People* v. *Thomas,* 5 Cal.App.3d 889, 896 [86 Cal.Rptr. 97].)

Defendant contends, however, that the pretrial identifications were so unnecessarily suggestive as to be conducive to irreparable mistaken identification, that the in-court identification was derived therefrom and that, therefore, the admission into evidence of these identifications of defendant abridged his right to due process of law. ■ (*Stovall* v. *Denno, supra; People* v. *Caruso,* 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336].) A judgment of conviction will be reversed on this basis only if the lineup procedure was so unnecessarily suggestive that it gave rise to a very substantial likelihood of irreparable misidentification. (*Simmons* v. *United States,* 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967, 971]; *People* v. *Thomas, supra,* at p. 898.) To sustain his claim of a violation of due process, defendant must show that his trial resulted in essential unfairness "not as a matter of speculation but as a demonstrable

reality." (*Adams* v. *United States,* 317 U.S. 269, 281 [87 L.Ed. 268, 276, 63 S.Ct. 236, 242]; *People* v. *Thomas, supra,* at p. 900.)

■ There is nothing whatever in the evidence to support defendant's contention that the pretrial identifications were unduly suggestive. He was shown photographs of six different men, all of Mexican ancestry. The photograph of defendant was in no way singled out, and, in fact, although he selected defendant's photograph, he was unable to make a positive identification because in the photograph defendant wore a beard. There is no evidence that the photographs were used to prime Mr. Keaton to identify defendant nor was Keaton told that the man whose photograph he had selected would be included in the lineup. (Cf. *People* v. *Feggans, supra,* 67 Cal.2d 444, 449; *People* v. *Brown,* 273 Cal.App.2d 109, 112 [77 Cal.Rptr. 863].) ■ Mere proximity in time between the viewing of photographs and a lineup is not, in itself, evidence that the witness has been improperly primed to make a lineup identification. (*People* v. *Feggans, supra; People* v. *Brown, supra.*)

■ Similarly, there is not a shred of evidence that there was anything suggestive about the lineup. All of the subjects were men of Mexican ancestry; all were dressed in similar clothing; and several resembled defendant.

Defendant urges that it can be inferred that defendant was the only person common to the photographs and the lineup. There is no evidence in the record to compel this conclusion, but even so, such a procedure would not be violative of due process absent some element of suggestiveness in the photographs or their presentation or in the lineup or its presentation. (Cf. *People* v. *Feggans, supra,* at p. 449.) Moreover, from the evidence there is a very strong inference that Mr. Keaton was not influenced by the photograph at all. He could not make positive identification from it because of the beard. But upon viewing the lineup, he immediately and unequivocably identified defendant. The conclusion is irresistible that he did so based on the descriptive facts he noticed at the time of the robbery, set forth in the statements of facts.

Since the pretrial identifications were in no way suggestive, the in-court identification could not have been tainted and is not subject to attack.

### The Prosecutor's Conduct

■ In his opening statement, the district attorney stated that he expected to prove, among other things, that less than 26 hours after the robbery, Detective David Daniels, of the Orange Police Department, observed the defendant in a phone booth outside a liquor store at 10:30 at

night, wearing sunglasses; that when asked for identification, defendant was unable to produce any and gave suspicious answers to inquiries as to the reason for his presence; that he was thereupon arrested by Detective Daniels and searched for weapons; that he had on his person a loaded .22 caliber pistol and several bullets; that nearby was found a 1958 Chevrolet convertible with a dark green body and white top, the same vehicle that was seen by Miss Workman near the market at the time of the robbery; that the keys were in the ignition; that the engine was still working; that there was a billfold on the seat of the automobile; and that in the billfold was defendant's driver's license.

As previously noted, the prosecution did present Miss Workman's testimony concerning the 1958 Chevrolet convertible she observed near the scene of the crime, and the .22 caliber pistol and bullets were introduced into evidence with the stipulation that they were in the defendant's possession on June 3, 1966, the day after the robbery. None of the other evidence mentioned by the prosecutor in his opening statement, however, was offered. There was no testimony concerning the circumstances of defendant's arrest nor the ensuing searches of defendant's person and the automobile. As a result, there was no proof whatever as to several items of evidence mentioned by the prosecutor in his opening statement, and there was no evidence whatever to connect defendant to the 1958 Chevrolet convertible observed by Miss Workman near the market. Nor, except for the stipulation that they were in his possession on June 3, was there any evidence connecting the gun and bullets with the commission of the robbery.

Defendant contends that this was prejudicial misconduct on the part of the prosecuting attorney, depriving him of his constitutional right to confrontation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. (See *Frazier* v. *Cupp,* 394 U.S. 731 [22 L.Ed. 2d 684, 89 S.Ct. 1420]; *Pointer* v. *Texas,* 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065].) Defendant asserts that, at the time he made his opening statement, the prosecutor did not in good faith believe that he could produce the evidence to which he referred. To support this assertion, defendant points to a statement made by the district attorney in response to an in-chambers inquiry made by the court whether he intended to put on evidence to connect defendant with the 1958 Chevrolet convertible. The district attorney replied, ". . . As far as going in and linking him up with the car, we will have to see how that goes. I will consider that during the interim."

As the high court said in *Frazier:* "Although the question thus posed is not an easy one, we cannot agree with [defendant's] conclusion. . . .

". . . It may be that some remarks included in an opening or closing

statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable. But here we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given. . . . [I]t does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to evidence introduced during the trial. . . .

". . . While we do not believe that the prosecutor's good faith, or lack of it, is controlling in determining whether a defendant has been deprived of the right of confrontation guaranteed by the Sixth and Fourteenth Amendments, . . . [t]he evidence presented in the record is sufficient to support the . . . conclusion that 'the state could reasonably expect' [to produce the evidence referred to by the prosecutor]". (*Frazier* v. *Cupp, supra,* 394 U.S. 731, 734-736 [22 L.Ed.2d 684, 690-691, 89 S.Ct. 1420, 1422-1423].)

It is quite clear from the record that, at the time he made his opening statement, the prosecutor fully intended to call Detective Daniels, the arresting officer, to testify to all of the facts mentioned in his opening statement. Detective Daniels had been present in the courtroom with the other prosecution witnesses, and the district attorney had indicated that he was one of the witnesses he intended to call. Defendant's attorney made a motion to exclude witnesses, and Detective Daniels and the other witnesses were excluded from the courtroom.

Subsequently, in chambers, as will be more greatly detailed hereafter, defendant's attorney objected to the introduction of the fingerprint evidence on the ground that it resulted from defendant's illegal arrest and detention. At the same time, he indicated his intention to object to the introduction of all of the evidence resulting from defendant's detention and arrest. The court then made a number of statements directed to the prosecutor questioning the advisability of his attempting to introduce the items and information resulting from the arrest. Typical was his statement: "It seems to me that, Counsel, you're going overboard. You've got a positive witness to the identity of the man. And aren't you, in attempting to throw in corroborating testimony, only raising the question of maybe the illegal search and seizure, illegal arrest or whatever it is, might be a stumbling block at a subsequent proceeding?" The prosecutor indicated that he felt strongly the necessity of introducing the fingerprint evidence, but, as to the other evidence, he was apparently persuaded by the court's comments,

for, except for the gun and bullets introduced by stipulation, he thereafter made no attempt to introduce any of the other evidence.

Defendant made no objection at trial to the alleged misconduct, nor any motion to strike, nor any motion for mistrial on this basis. Neither did he request any admonition to the jury. ■ In the absence of an objection in some form, misconduct of the prosecutor will not generally be a ground for reversal on appeal. (See Witkin, Cal. Criminal Procedure (1963 and 1969 Supp.), § 748 and numerous cases there collected.) There are two recognized exceptions to this general rule: (1) where the case is closely balanced, there is grave doubt of the defendant's guilt, and the misconduct is such as to contribute materially to the verdict; and (2) where the misconduct is of such character that a harmful result cannot be obviated or cured by any admonition to the jury. (*People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556]; *People* v. *Goodwin,* 261 Cal.App.2d 723, 734 [68 Cal.Rptr. 247].)

■ This is not a closely balanced case, and, although the evidence referred to by the prosecutor and not produced cannot be said to have been insignificant, we do not believe that the error was such as could not be obviated by an objection and appropriate admonition. (Cf. *People* v. *Granados,* 49 Cal.2d 490, 495 [319 P.2d 346]; *People* v. *Berryman,* 6 Cal.2d 331, 336 [57 P.2d 136]; *People* v. *Alexander,* 41 Cal.App.2d 275, 282-283 [106 P.2d 450, 916].) In fact, at the outset of his opening statement, the district attorney told the jury that the statements of counsel were not to be considered evidence, and in its instructions to the jury, the court gave an instruction to the same effect. It is not unreasonable to assume, in view of the precautionary statement of the prosecutor and the express instruction by the court, that the jury limited its consideration to the evidence introduced during the trial. (*Frazier* v. *Cupp, supra,* 394 U.S. 731, 735, 736 [22 L.Ed.2d 684, 690, 691, 89 S.Ct. 1420, 1423]; *People* v. *Chavez,* 50 Cal.2d 778, 790 [329 P.2d 907]; *People* v. *Ferlin,* 203 Cal. 587, 601 [265 P. 230].)

■ *The Fingerprint Evidence*

When the district attorney indicated that his next witness would be the fingerprint identification technician, proceedings were adjourned to chambers where defense counsel objected to the introduction of the fingerprint evidence on the ground that the exemplar of defendant's fingerprints used by the police were obtained while he was in custody as a result of his arrest. Neither party introduced any evidence of the circumstances of the arrest. Defense counsel stated: "The basis of my objection is that it appears to me from my knowledge that the defendant was possibly in the Orange County

Jail as a result of an illegal arrest." He offered to show that defendant was in custody and submitted to police authority in the taking of his prints. He requested several times that the prosecutor make an offer of proof or that the arresting officer be called so that a hearing could be had on the circumstances of the arrest.

It was conceded that, in taking the prints, the police did not use force or brutality, and both counsel and the trial judge felt that, under the law then applicable, fingerprints taken during an unlawful custody were nevertheless admissible in the absence of evidence that they were taken by means of brutality or conduct shocking to the conscience. (Cf. *People* v. *Graves,* 64 Cal.2d 208, 210-211 [49 Cal.Rptr. 386, 411 P.2d 114]; *People* v. *Matteson,* 61 Cal.2d 466, 469 [39 Cal.Rptr. 1, 393 P.2d 161]; *People* v. *Kemp,* 55 Cal.2d 458, 478 [11 Cal.Rptr. 361, 359 P.2d 913]; see also the dissenting opinion in *People* v. *Sesslin,* 68 Cal.2d 418, 431, 434 [67 Cal.Rptr. 409, 439 P.2d 321] [decided in 1968 after trial of the case at bench].) Defense counsel demonstrated unusual foresight in stating, "I am not arguing that the present law in the state at this time is that fingerprints taken under such conditions should be excluded as the result of an illegal arrest, but I feel that possibly in the future it may be raised in some other cases, which would give the defendant a ground for appeal."

As predicted, on April 22, 1969, the United States Supreme Court decided *Davis* v. *Missssippi,* 394 U.S. 721 [22 L.Ed.2d 676, 89 S.Ct. 1394] in which it was held that the defendant's fingerprint exemplars taken during his unlawful detention must be excluded from evidence. Although the *Davis* case involved the indiscriminate roundup of numerous young men for the purpose of interrogation and fingerprinting, the high court gave no indication that its ruling was to be limited to those facts. On the contrary, it rested its decision squarely on the general exclusionary rule adopted in 1961 in *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684] and a 1958 decision of a federal court of appeals, *Bynum* v. *United States,* 262 F.2d 465. *Bynum* involved no such indiscriminate roundup. On the contrary, it involved the unlawful arrest of a single individual.

The Attorney General first contends that it was not sufficient for defendant merely to object on the ground that the evidence was the product of an unlawful arrest; that it was incumbent upon him to present some evidence, at least that the arrest was not made on the basis of a warrant. (See *People* v. *Johnson,* 68 Cal.2d 629, 632 [68 Cal.Rptr. 441, 440 P.2d 921]; *People* v. *Wozniak,* 235 Cal.App.2d 243, 250 [45 Cal.Rptr. 222]; *People* v. *Hurst,* 183 Cal.App.2d 379, 384 [6 Cal.Rptr. 483].) We entertain considerable doubt as to the continuing vitality of the rule relied upon by the Attorney General in view of *People* v. *Burke,* 61 Cal.2d 575, 578

[39 Cal.Rptr. 531, 394 P.2d 67], in which our Supreme Court stated: "Ordinarily proof of the existence of a search warrant is a simple matter, and in the face of an objection that the evidence has been illegally obtained it seems obvious that the prosecution will produce a warrant if one exists." (Cf. also *People* v. *Wohlleben,* 261 Cal.App.2d 461, 466 [67 Cal.Rptr. 826]; but cf. *People* v. *Carson,* 4 Cal.App.3d 782, 785-786 [84 Cal.Rptr. 699].) In any event, however, we find the rule of *Burke* applicable to this case. In the first place, it is quite clear from the opening statement of the district attorney that there was no arrest warrant. In the second place, as previously noted, the court ruled that the legality of the arrest would not be determinative of the admissibility of the fingerprint evidence in the absence of a showing of unconscionable force or brutality. Furthermore, if *Davis* v. *Mississippi, supra,* is construed as announcing a new exclusionary rule, a problem we discuss below, defendant could raise the question on this appeal without having made any objection in the court below. (*People* v. *Kitchens,* 46 Cal.2d 260, 262-263 [294 P.2d 17].)

We are thus faced with the question whether the rule of *Davis* v. *Mississippi, supra,* decided in 1969, should be applied to this case tried in August 1966 and involving police conduct in June 1966. We are met at the outset with the necessity of determining whether *Davis* announced a rule sufficiently new to give rise to a choice between prospective and retroactive application. (See *Desist* v. *United States,* 394 U.S. 244, 247-248 [22 L.Ed.2d 248, 254, 89 S.Ct. 1030, 1032-1033].)

■ It is clear that to present the now familiar choice of retroactive or prospective application, a case announcing a constitutional rule of evidence to be applied to criminal cases need not be new in the sense that it involves the overruling of prior cases. *United States* v. *Wade, supra,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California, supra,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951] overruled no prior case, yet the rule announced is held applicable only to police conduct occurring after the date of those decisions. (*Stovall* v. *Denno, supra,* 388 U.S. 293, 296-301 [18 L.Ed.2d 1199, 1203-1206, 87 S.Ct. 1967, 1969-1972].) Likewise, *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] overruled no prior case, yet is held applicable only to trials begun after the decision in that case. (*Johnson* v. *New Jersey,* 384 U.S. 719, 731 [16 L.Ed.2d 882, 891, 86 S.Ct. 1772, 1780].)

If the ruling has been fully anticipated or foreshadowed by a prior case, the rule should be applied retroactively to the date of the prior case. (*Johnson* v. *New Jersey, supra,* at p. 734 [16 L.Ed.2d at pp. 892-893, 86 S.Ct. at p. 1781].) As indicated in *People* v. *Reserva,* 2 Cal.App.3d 151,

154 [82 Cal.Rptr. 333], the holding in *Davis* v. *Mississippi, supra,* was substantially anticipated by the majority of the California Supreme Court in *People* v. *Sesslin, supra,* 68 Cal.2d 418, 430-431. This is of little assistance to us, however, for *Sesslin* itself was decided April 10, 1968, almost two full years after the police conduct and trial in the case at bench.

It can also be argued with great force that the holding in *Davis* v. *Mississippi, supra,* was foreshadowed to a considerable extent by the 1961 decision of the United States Supreme Court in *Mapp* v. *Ohio, supra,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684] in which the already existing federal exclusionary rule was imposed upon state courts as a matter of constitutional law. Under the federal exclusionary rule, it had already been decided, at least by one court, that fingerprints obtained as a result of an unlawful arrest were inadmissible. (*Bynum* v. *United States, supra,* 262 F.2d 465.) As previously noted, in the *Davis* decision, the court based its holding squarely on *Mapp* v. *Ohio, supra,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684] and *Bynum* v. *United States, supra.*

The question whether a rule announced is new so as to present a choice of retrospective or prospective application is not foreclosed, however, by the fact that the later ruling is a logical outgrowth of a prior holding and its necessary implications. As the high court recognized in *Johnson* v. *New Jersey, supra,* 384 U.S. 719, 733-734 [16 L.Ed.2d 882, 892-893, 86 S.Ct. 1772, 1780-1781], the holding in *Miranda* was a logical outgrowth from and virtually a necessary implication in the holding of *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]. Nevertheless, *Miranda* was accorded prospective application only. (*Johnson* v. *New Jersey, supra.*) Although in holding that the rule of *Wade* and *Gilbert* was not to be given retroactive application, the court stated, "Today's rulings were not foreshadowed in our cases; . . ." (*Stovall* v. *Denno, supra,* 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1205, 87 S.Ct. 1967, 1971], the holdings in *Wade* and *Gilbert* were logical outgrowths of and predictable from the prior holdings in *Powell* v. *Alabama,* 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55]; *Hamilton* v. *Alabama,* 368 U.S. 52 [7 L.Ed.2d 114, 82 S.Ct. 157]; *Massiah* v. *United States,* 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199]; *Escobedo* v. *Illinois, supra,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; and *Miranda* v. *Arizona, supra,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].) (See *United States* v. *Wade, supra,* 388 U.S. 218, 224-226 [18 L.Ed.2d 1149, 1155-1157, 87 S.Ct. 1926, 1930-1932].)

█ We are persuaded that, although it is also a factor to be considered in determining whether retroactive or prospective application shall be accorded (*Desist* v. *United States, supra,* 394 U.S. 244, 249 [22 L.Ed.2d

248, 255, 89 S.Ct. 1030, 1033]; *Stovall* v. *Denno, supra,* 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967, 1970]), the actual prior practice of those involved in the administration of criminal justice—the police, prosecutors, the courts, and the defense bar—must be considered in determining whether a newly announced rule is new so as to fairly present the choice between retroactive and prospective application. (Cf. *Desist* v. *United States, supra,* at pp. 247-248 [22 L.Ed.2d at p. 254, 89 S.Ct. at pp. 1032-1033] ["But the assumption persisted that electronic surveillance did not offend the Constitution. . . ."]; *Stovall* v. *Denno, supra,* at p. 299 [18 L.Ed.2d at p. 1205, 87 S.Ct. 1967 at p. 1971] ["The law enforcement officials of the Federal Government and of all 50 States have heretofore proceeded on the premise that the Constitution did not require the presence of counsel at pretrial confrontations for identification."].)

Aside from *Bynum* v. *United States, supra,* 262 F.2d 465, decided under the federal exclusionary rule in 1958, we have been referred to no case prior to *Davis* v. *Mississippi* holding that fingerprints obtained during a detention following an unlawful arrest were inadmissible at the trial, and the court in *Davis* v. *Mississippi* cited none other than *Bynum.* We have found no California case ruling on the precise point. As previously mentioned, in 1968, *People* v. *Sesslin, supra,* 68 Cal.2d 418, 430-431, held that handwriting exemplars obtained as a result of an unlawful arrest were inadmissible, and it may be conceded that a similar ruling as to fingerprints could have been fully anticipated from the holding in *Sesslin.* We are concerned, however, with the practice in the administration of criminal justice in 1966, two years before *Sesslin.*

We think it undeniable that in 1966, those involved in the administration of criminal justice in the State of California believed in good faith that fingerprints obtained as a result of an unlawful arrest were admissible unless they had been obtained by the use of unconscionable force or police brutality. (Cf. *People* v. *Graves, supra,* 64 Cal.2d 208, 210-211; *People* v. *Matteson, supra,* 61 Cal.2d 466, 469; *People* v. *Kemp, supra,* 55 Cal.2d 458, 478; and see particularly the dissenting opinion in *People* v. *Sesslin, supra,* 68 Cal.2d 418, 431, 434.) Although it was clear after 1961 that physical evidence obtained as a result of an unlawful search or seizure was inadmissible (*Mapp* v. *Ohio, supra,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684]), and although after 1963 it was clear that the exclusionary rule applied also to testimonial evidence (*Wong Sun* v. *United States,* 371 U.S. 471, 485-486 [9 L.Ed.2d 441, 453-454, 83 S.Ct. 407, 416]; *People* v. *Bilderbach,* 62 Cal.2d 757, 763-768 [44 Cal.Rptr. 313, 401 P.2d 921]), there appears to have been a general belief that such things as handwriting exemplars and fingerprint exemplars were distinguishable because

of the ease of obtaining such evidence from independent sources and its testimonial trustworthiness. (See dissenting opinion in *People* v. *Sesslin, supra,* at pp. 431, 434-435; see also dissenting opinion of Mr. Justice Stewart in *Davis* v. *Mississippi, supra,* 394 U.S. 721, 730 [22 L.Ed.2d 676, 682-683, 89 S.Ct. 1394, 1399]; cf. *People* v. *Graves, supra,* 64 Cal.2d 208, 211.) We think it not insignificant that the dissenting opinion in *Sesslin* was authored by Mr. Justice Mosk, who, not many years before, was the Attorney General of the State of California. Further, the record in the case at bench furnishes concrete evidence of the view that prevailed in 1966. As previously set forth, at the time of trial in this case, the judge, the prosecutor, and defense attorney all believed that the fingerprint evidence was admissible under the law as it then existed in the absence of unconscionable force or police brutality irrespective of the legality of the arrest. Both the attorney for the defense and the prosecutor so stated, and the court so ruled. It is our conclusion, therefore, that the choice between prospective and retroactive application of the rule in *Davis* v. *Mississippi, supra,* at least as to cases prior to *Sesslin, supra,* is fairly presented.

It is a much easier matter to make the choice than to decide whether the choice is available. ■ " 'The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by the law enforcement authorities on the old standards, and (c) the effect on the administration of justice of the retroactive application of the new standards.' " (*Desist* v. *United States, supra,* 394 U.S. 244, 249 [22 L.Ed.2d 248, 255, 89 S.Ct. 1030, 1033]; *Stovall* v. *Denno, supra,* 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967, 1970].)

■ We have already discussed the reliance by those involved in the administration of criminal justice on the old standards. While not overwhelming, it points toward the choice of prospective application. We have no way of knowing the extent of the burden on the administration of criminal justice that would result from retroactive application. We may assume that it would not be great in terms of the number of cases involved. As pointed out by the high court, however, the factors of the extent of reliance and consequent burden on the administration of justice become greatly significant only when the purpose of the newly announced rule does not clearly favor either retroactivity or prospectivity. (*Desist* v. *United States, supra,* 394 U.S. 244, 251 [22 L.Ed.2d 248, 256, 89 S.Ct. 1030, 1035].) When the purpose of the newly announced rule overwhelmingly supports prospective application only, prospective application will be accorded even if relatively few convictions would be set aside by retroactive application. (*Desist* v. *United States, supra,* at pp. 251-252 [22 L.Ed.2d at pp. 256-257, 89 S.Ct. at p. 1035].)

The rule announced in *Davis* v. *Mississippi, supra,* serves one purpose and one purpose only, to deter illegal police conduct. In view of the great reliability of fingerprint evidence, the rule cannot be considered as being based at all upon considerations of excluding unreliable evidence or insuring the integrity of the fact-finding process. (Cf. *Desist* v. *United States, supra,* at p. 250 [22 L.Ed.2d at pp. 255-256, 89 S.Ct. at p. 1034].) Since the exclusive purpose of the rule is to deter illegal police conduct, that purpose would not be served in any way by retroactive application to police conduct that occurred more than four years ago. (*Desist* v. *United States, supra,* at p. 249 [22 L.Ed.2d at p. 255, 89 S.Ct. at pp. 1033-1034].)

For the same reasons, it would serve no useful purpose to apply the rule of *Davis* v. *Mississippi, supra,* to cases not yet final on the date of its decision but where the police conduct and the prosecutor's and court's reliance on the old standards occurred years before. The reliance of the police focuses upon the time of their conduct. (*Desist* v. *United States, supra,* 394 U.S. 244, 253 [22 L.Ed.2d 248, 257, 89 S.Ct. 1030, 1036].) The reliance of the prosecutor and the court focus upon the time of trial. (Cf. *Johnson* v. *New Jersey, supra,* 384 U.S. 719, 733-734 [16 L.Ed.2d 882, 892-893, 86 S.Ct. 1772, 1780-1781].) No subsequent point in the prosecution constitutes a relevant date. (*Desist* v. *United States, supra,* at p. 253 [22 L.Ed.2d at p. 257, 89 S.Ct. at p. 1036].) We hold, therefore, that the rule of *Davis* v. *Mississippi, supra,* 394 U.S. 721 [22 L.Ed.2d 676, 89 S.Ct. 1394] is not to be applied retroactively to the case at bench even though it was not final on the date of decision in the *Davis* case. (*Desist* v. *United States, supra; Fuller* v. *Alaska,* 393 U.S. 80 [21 L.Ed.2d 212, 89 S.Ct. 61]; *Johnson* v. *New Jersey, supra.*)[2]

### *The Motion for Mistrial*

Defense counsel made a motion for mistrial because of the trial court's statement to the jury, in connection with his instruction on circumstantial evidence, that, in his opinion, the instruction was not applicable

---

[2]Although the exclusionary rule of *Mapp* v. *Ohio, supra,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684] was applied without discussion to cases not yet final (see *Johnson* v. *New Jersey, supra,* 384 U.S. at p. 732 [16 L.Ed.2d at pp. 891-892, 86 S.Ct. at p. 1780], *Linkletter* v. *Walker,* 381 U.S. 618, 622, fn. 4 [14 L.Ed.2d 601, 604, 85 S.Ct. 1731, 1734]), these more recent pronouncements of the high court have recognized that where retroactivity is indicated, application to pending appeals serves no useful purpose. This conclusion seems particularly sound when it appears, as in the case at bench, that, because of the nature of the evidence (a fingerprint exemplar), it can readily be obtained from an independent source or upon the lawful rearrest of the defendant. (See dissent of Mr. Justice Stewart in *Davis* v. *Mississippi, supra,* 394 U.S. 721, 730 [22 L.Ed.2d 676, 682-683, 89 S.Ct. 1394, 1399].)

and that he was giving it only because both attorneys had requested it.[3] This, defendant contends, when combined with the court's failure to give an instruction to the effect that any comments made by him are advisory only (e.g., CALJIC No. 7, 1965 rev.; CALJIC 3d Ed. No. 17.32) constituted prejudicial error, and the court abused its discretion in refusing to grant the motion for mistrial.

Preliminarily, we note that, even when his motion for mistrial was denied, defense counsel did not request the giving of an instruction to the effect that the judge's comments were only advisory. More importantly, we agree with the trial judge that the instruction on circumstantial evidence was not appropriate on the facts of this case. The instruction given on circumstantial evidence was CALJIC No. 26 (1965 rev.).[4] The instruction contains one fundamental premise and two essential points. The premise is that the instruction only applies "[w]here the case of the People rests substantially or entirely on circumstantial evidence." Where the circumstantial evidence in the case is only incidental or corroborative, the instruction is not required. (*People* v. *Malbrough*, 55 Cal.2d 249, 251 [10 Cal.Rptr. 632, 359 P.2d 30]; *People* v. *Blankenship*, 171 Cal.App.2d 66, 84 [340 P.2d 382].) The two essential points in the instruction are (1) that the defendant may not be found guilty unless the proved circumstances are not only consistent with the theory that he is guilty but cannot be reconciled with any other rational conclusion and (2) that if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, the interpretation pointing to innocence must be accepted.

In the case at bench, the only circumstantial evidence was the fingerprint evidence and the gun and bullets stipulated to be in the possession of defendant the day after the robbery. This evidence was only corroborative of the eyewitness testimony of Mr. Keaton, and the instruction was not required. (*People* v. *Malbrough, supra; People* v. *Jerman*, 29 Cal.2d 189, 196-197 [173 P.2d 805]; *People* v. *Blankenship, supra.*) Moreover, this circumstantial evidence was only susceptible to one interpretation, the guilt of the defendant, and could not be reconciled with any other rational conclusion. Actually, inasmuch as there was no evidence tending to indicate that the gun and bullets were in any way related to the robbery charge, they appear to be irrelevant, and need not have been the subject of any instruction at all. (*People* v. *Jerman, supra,* 29 Cal.2d 189.)

---

[3]The actual statement is not a part of the record, but its substance is contained in the transcript of the argument on the motion for mistrial.

[4]The substance of this instruction, with some deletions, is now contained in CALJIC No. 2.01, third edition.

## The Judgment

The judgment does not comply with *People* v. *Floyd*, 71 Cal.2d 879, 884 [80 Cal.Rptr. 22, 457 P.2d 862], decided long after pronouncement of judgment in this case. Although the information charged that in the commission of the robbery defendant used a deadly weapon, to wit, a pistol, there was no separate armed allegation as provided in Penal Code, section 969c. The abstract of judgment contains a recital that "Defendant was not charged and admitted being, or was found to have been armed with a deadly weapon at the time of the commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code, sections 969c and 3024." To clarify the judgment and to comply with *Floyd, supra,* the judgment is modified as follows. The above quoted language in the abstract of judgment is stricken and the following provision is added to the judgment: "Defendant was not separately charged with being armed with a deadly weapon at the time of the commission of the offense within the meaning of section 969c of the Penal Code. Sections 3024 and 12022 of the Penal Code are inapplicable, but defendant was at the time of the commission of the offense personally armed with a deadly weapon, to wit, a pistol, within the meaning of section 1203 of the Penal Code." (See *People* v. *Williams,* 2 Cal.3d 894, 910-911 [88 Cal.Rptr. 208, 471 P.2d 1008].)

As thus modified, the judgment is affirmed.

Gardner, P. J., and Tamura, J., concurred.